GURDIN *v.* FISHER.

Opinion delivered June 10, 1929.

*Rowell & Alexander,* for appellant.

*Buzbee, Pugh & Harrison,* for appellee.

MEHAFFY, J.   Mrs. Millie Gurdin, one of the appellants, filed suit in the Garland Circuit Court against appellees, and her deceased husband, during his lifetime, had filed suit, and, after his death, his son, Charlie. Gurdin, filed a substituted complaint as administrator of the estate of N. Gurdin, deceased, and the two cases, that is, the cases of Mrs. Millie Gurdin and Charlie Gurdin, administrator, were consolidated and tried together.

It was alleged by Millie Gurdin that on the 10th day of July, 1927, she was the invited guest in an automobile owned by the appellee Rose Fisher, and driven by the appellee Charles Rosenfield.  She alleged that Rose Fisher is liable to the appellant for the negligence of her agent, driving said car at her direction and request, and that Charles Rosenfield is liable personally for the negligence complained of; that appellee and Charlie Gurdin and N. Gurdin, husband of Millie Gurdin, had started from Hot Springs, Arkansas, to Pine Bluff, Arkansas, in a car belonging to Rose Fisher and driven by Charles Rosenfield, and that in driving said car on the highway near Red Gates Inn, in Pulaski County, Arkansas, the appellee carelessly and heedlessly, and in wanton disregard of the rights and safety of appellant, and without caution and circumspection, and at a speed in a manner to be dangerous, negligently drove said car off of the pavement.   While said car was in motion the defendant, Charles Rosenfield, negligently handled and manipulated said car, after it left the pavement, by suddenly turning said car back on the highway.   At the time said car was negligently permitted to leave the pavement the right wheel sank into a deep rut, and while in that position, without stopping the car or slowing its speed, appellee Charles Rosenfield negligently and care-

lessly turned the car in such a manner which caused said car to wreck and turn over twice, and severely injure this appellant.

There were other allegations about the width of the pavement and there being no necessity to leave the pavement, and allegations of negligence in handling the car as it left the pavement, and about the injury to the appellant. It was alleged that Charles Rosenfield was driving the car at the direction and under the control of Rose Fisher, as her agent, and that both of them were liable to appellants; that they were both negligent, and caused the injury. The injury then is described by appellant, and the extent of it. She alleged that her injuries were permanent, and asked for $25,000 damages.

The complaint of Charles Gurdin, administrator, contains the same allegations of negligence as the complaint of Mrs. Millie Gurdin, and asks for damages for pain and suffering of N. Gurdin.

The defendants filed answers, denying the material allegations of the complaints. There was a verdict and judgment for the appellees, and this appeal is prosecuted by appellants to reverse said judgment.

We deem it unnecessary to set out the testimony as to the extent of the injuries received by N. Gurdin and Mrs. Millie Gurdin, because the verdict was against them. There was a sharp conflict in the testimony as to the extent of the injuries.

Millie Gurdin testified that she lived in Hot Springs, Arkansas; was 48 years old, and had four sons and one daughter; that before the accident she was in good health, and had never had a doctor. She was injured on Sunday morning, July 10. She wanted to go to Pine Bluff to see her daughter, and Mr. Rosenfield and Miss Fisher wanted to go with her. They had a new car, and told her son, Charlie, that they would take them in the new car. Sunday morning between six and seven o'clock they blew their horn, and she was ready. Miss Fisher was in the back seat with Mr. and Mrs. Gurdin, and Mr.

Rosenfield and Charlie Gurdin were in the front seat. About ten miles from Little Rock Mr. Rosenfield, some way or other, got in a rut, or got in something, and all witness knew was a jar and a shock, and the car went over and she was hurt. She testified they were all hurt, but she was hurt worse, except for her husband, who was hurt worse than she was. She did not know how Rosenfield got off the concrete. Imagined he was driving too fast, but really could not tell the speed. He was going between 45 and 50 miles an hour. Could not tell exactly, because she was in the back seat. Before they left Hot Springs, witness stated that Miss Fisher said: "Mr. Rosenfield is going to drive to Little Rock, and if he gets tired I guess Charlie will take the wheel." Miss Fisher told her that Charlie Rosenfield was going to drive for her (it was her car) to Little Rock, and Charlie Gurdin would drive after they got to Little Rock.

She then testifies about her injuries and doctor bills, and said she didn't look at the time after it happened, but guessed it was between nine and ten. They had been gone about an hour and a half or an hour and forty-five minutes.

The parties were friendly before the accident. They had been riding along as a party of friends, never thinking about an accident. Witness said if she was not mistaken she remarked two or three times about going fast, but when people were driving and it wasn't her car she couldn't say stop. She was going to Pine Bluff Sunday morning. Her son, Charlie, came home Saturday night, and said, "Mamma, we are going with Charlie Rosenfield and Rose Fisher in her new car," and she said "All right." They had been planning to drive over in their car. Rosenfield and Rose Fisher appeared at witness' house between six and seven o'clock on Sunday morning, and Rosenfield was to drive to Little Rock, and Charlie Gurdin was to drive from Little Rock to Pine Bluff. She noticed Rosenfield driving fast, but told nobody but her husband. He kept driving fast until the

accident happened. The accident happened somewhere around Red Gates Inn. Rose Fisher suggested that Rosenfield drive to Little Rock. Witness then testified about her husband's injuries.

Charlie Gurdin testified that he was twenty-eight years of age, and that he was a son of the appellant. That on July 10, 1927, Charlie Rosenfield, at the request of Rose Fisher, took them from Hot Springs to Little Rock. They called by the house to pick them up, and Rose Fisher said that Charles Rosenfield would drive from Hot Springs to Little Rock and that witness would take the wheel at Little Rock and drive to Pine Bluff. The accident happened a few minutes after eight o'clock. Witness said that Rosenfield was making curves a little fast, and that he cautioned him once or twice. The curves on the Hot Springs highway up to the Pulaski County line are protected; the curves are easier on the Hot Springs highway to take than the flat curves on the Pulaski County road; the result was, when he hit this curve the momentum at which he was driving pulled him off the curve, right off the road. He did not go off very far, however, but it happened there was a rut paralleling the road, about eight or ten inches in depth. When the front wheel hit the rut, it naturally pulled the back one in, and, instead of using ordinary prudence and caution in driving through that rut, he jerked his wheel around, and when he jerked his wheel around he jerked it all of the way over, and caused the car to run completely from the right side of the road around on the left, and turn over. He made one complete turn of that wheel, and held it there. When he jerked his wheel around, he ran his wheel just as far over to the left as he possibly could, and never righted it. The car turned over at least twice, or one and a half times, to be exact.

Witness testified about the condition of his father and mother, and their injuries. He then said that if Rosenfield had continued through the rut he would have got back on the pavement all right. The trouble was

he was trying to cut out of the rut. Witness hollered to him, "Don't cut, go through." He was told he would take the car from Little Rock to Pine Bluff. His mother was going to Pine Bluff to see her daughter, and witness went along to help drive as much as anything else.

Charles Rosenfield testified that he was engaged in the mercantile business in Hot Springs; that he knew Mr. Gurdin during his lifetime; knew Mrs. Gurdin and Charles Gurdin. He was a brother-in-law to Miss Rose Fisher. On Saturday night, July 9, he was in his place of business, and Charlie Gurdin came in with his sister-in-law, and asked witness whether he would be willing to go see his sister in Pine Bluff. An engagement was made for Sunday morning at 6:30. Witness understood at the time whom he was going with, but made no statement about whose car they were going in. They did not have any understanding either way about whose car they were going in, and it was understood that they would be over there at 6:30. They took Miss Rose Fisher's car down to the garage and filled it with gasoline, and went up there at 6:30. The Gurdins came out, and they started. Witness understood that Charlie Gurdin was tired, and that he would drive from Hot Springs to Little Rock and Charlie Gurdin would drive from Little Rock to Pine Bluff. They were driving a Buick, a closed car, five-passenger. He and Charlie Gurdin were in the front seat and Mr. and Mrs. Gurdin and Miss Rose Fisher were in the back seat. Witness drove all the way from Hot Springs until the accident happened. Did not know what time it was, but heard somebody remark that it was about a quarter to nine when the accident happened. Was driving between thirty and thirty-five miles an hour. Nobody in the car made any statement about driving fast. Charlie Gurdin said nothing about driving fast around the curves. No complaint was made.

When asked to tell how the accident happened, he said: "Well, there was a Ford with four or five people

stopping there, coming this way, and we were going the other way, and I tried to avoid the collision, because the Ford occupied a little more of my space, and, trying to avoid the collision, suddenly I turned the wheel towards my right, and suddenly it slipped off the main pavement, and it got into a rut.'' Witness then tried to get it back on the pavement the best he could, and made one wrench, and it came up on the highway and then across to the other side. Wasn't positive whether it turned over, but thought it must have done so. The road was straight; not on a curve. He was trying to pull away to the right to avoid the car he was meeting; to avoid the other car and avoid an accident, and was trying to get back on the pavement. Witness said it was understood that they were invited, and were going for those people to go for the ride to go to Pine Bluff to see Mrs. Gurdin's daughter. It was Miss Fisher's car. When he got the car, Miss Rose Fisher got in the back seat, and then went to the Gurdin's. Witness drove for Miss Fisher often.

Miss Rose Fisher testified that Charlie Rosenfield is her brother-in-law. She met Mrs. Gurdin on July 9, and Mrs. Gurdin said: ''I am driving tomorrow to my daughter's in Pine Bluff, and I want you to go too.'' She insisted on witness accepting the invitation. She told Mrs. Gurdin she was on her way to the dentist, and she told her that Charlie Gurdin would go with her to the dentist and invite Rosenfield to go to Pine Bluff. Mrs. Gurdin's son drove witness over to the store, and talked with Rosenfield. When they left the store, Charlie Gurdin turned around and said, ''Miss Rose, it would be a good idea to take your car, it is a closed car, and might be bad.'' Witness said ''All right.'' The next morning Charlie Gurdin said to Rosenfield: ''I wish you would drive as far as Little Rock, and I will drive to Pine Bluff, because I didn't sleep any more than two hours last night.'' So they went on, and out from Little Rock Rosenfield, to avoid the big accident,

was trying to give them all the room he could to pass, and the car skidded a little bit off the pavement, and he jerked once, and cried out through the window, and witness was thrown out of the car. The car had turned entirely over. Mr. Gurdin did not get a scratch. Mr. Rosenfield was driving between thirty and thirty-five miles an hour. No one complained about fast driving.

On cross-examination, witness said she was 29 years of age, and that she permitted Charlie Rosenfield to drive her car. He was her agent in handling those matters, and he drove at her request. She said that any time he was driving the car it was all right, and, at the time of the accident, it was with her knowledge and consent that he was driving the car.

Mrs. Gurdin was recalled, and testified that Rose Fisher did not see her Saturday, and that Sunday morning when she got up and woke Charlie Gurdin and told him that he promised to take her to Pine Bluff, he said: "Mother, Charlie Rosenfield and Rose Fisher are going with us, and they are going to take us in their car,' and we will leave our car for the boys." Saturday witness had asked Charlie, her son, to take her in their car, and she did not know that Rosenfield and Rose Fisher were going with them.

The above is all of the testimony that it is necessary to set out, as the other testimony relates chiefly to the extent of the injuries.

Appellant's first contention is that instruction numbered three, given by the court, was prejudicial because it ignored the liability of Rose Fisher, and was calculated to mislead the jury. We do not agree with appellants in this contention. The court did not undertake in this instruction to cover the entire case, but it told the jury, among other things, that the driver of an automobile is required to use ordinary care in driving and handling a car in order to avoid accidents and prevent injuries to others who might be guests in the car with him, and if they found from the testimony that the

accident complained of was caused by the careless or reckless manner in which the car was being driven, or that, after he had left the pavement, he was guilty of carelessness or negligence in the manner in which he undertook to bring it back on the pavement, and, on account of his negligence in either respect, the accident happened and injured the plaintiffs, or either of them, they were entitled to recover against the defendant, Rosenfield.

This was a correct instruction, and it did not ignore the liability of Rose Fisher, but did not undertake to cover any phase of the case except the negligence of the driver.

The appellants also contend that instruction number five told the jury that it was a joint adventure, and that Miss Fisher was not liable. We do not agree with appellants in this contention. The court, in instruction number five, simply told the jury, in substance, that, if Rosenfield became the driver at the instance and request of Charles Gurdin, he was not the agent of Rose Fisher. Other instructions told the jury that, if he was the agent of Rose Fisher, Rose Fisher would be liable for any act of negligence of her agent. This instruction was not misleading. The jury, we think, could not have misunderstood the meaning of the instructions. The court did not undertake to cover all phases of the case in one instruction, but gave quite a number of instructions which, taken together, covered the entire case.

Appellants then discuss the doctrine of joint adventure, and cite many authorities. We do not deem it necessary to review them or call attention to them, for the reason that the law governing such cases is thoroughly settled by the decisions of this court.

"The driver of an automobile or motor vehicle is bound to the exercise of ordinary care in the operation thereof for the safe transportation of his guests and other passengers, and to avoid personal injury to them, and this duty extends to all such passengers, whether

guests by sufferance, invited or self-invited.'' *Bennett* v. *Bell,* 176 Ark. 690, 3 S. W. (2d) 996.

And the court in this case instructed the jury that if the driver, Rosenfield, was guilty of negligence whereby any of the passengers were injured, he was liable. And it would make no difference whether it was a joint enterprise or whether the passengers were guests by sufferance, or whether they were invited by the driver or some one else, or self-invited. Negligence of the driver that resulted in injury to any of them made him liable, and the court so told the jury.

Again, this court has said, in discussing the distinction between the duty to invitees and bare licensees:

''The trend of modern authority is to disregard this distinction and apply the rule of duty imposed on owners and drivers of vehicles to invitees, to self-invitees or licensees also. The prevailing rule, approved by recent cases, requires drivers of automobiles to exercise ordinary care in the operation thereof to transport their passengers safely, whether guests by sufferance, self-invited guests, or invited guests. * * * It seems to us that the only sensible and humane rule is that an owner and driver of an automobile owes a guest at sufferance the duty of using reasonable care so as not to injure him.'' *Black* v. *Goldweber,* 172 Ark. 862, 291 S. W. 76.

The court also instructed the jury in the instant case that if Rosenfield was the agent of Rose Fisher, or rather, if Rosenfield was driving the car at the instance and request of the defendant, Rose Fisher, then he would be acting in the capacity as her agent in driving the car, and they should find for the plaintiffs against the defendant Rose Fisher, if they found that Rosenfield, the driver, was negligent.

It is next contended by the appellants that instruction number seven was erroneous; that the giving this instruction was prejudicial, and that the judgment should be reversed for that reason. This instruction, standing alone, would perhaps be incorrect in the form given, be-

cause it does not specifically mention the charge of negligence in reckless driving, but we think, when the instructions are all considered together, that they constituted a correct guide to the jury, and that the jury could not have been misled by the giving of instruction number seven, especially as the jury are told in this instruction to find for the defendants if the accident occurred through no carelessness or negligence on the part of either defendant.

The appellants also contend that the instructions requested by them should have been given. Some of the instructions requested by them were correct, and should have been given but for the fact that they were covered by other instructions given by the court.

As to the question of negligence of the driver, the testimony is in hopeless conflict, and, the jury having found against appellants on conflicting evidence, the verdict cannot be disturbed.

It would serve no purpose to set out all the instructions; there were a number of them, and some of them lengthy, but we have reached the conclusion that the charge of the court as a whole constituted a correct statement of the law and a correct guide for the jury, and there is substantial evidence to sustain their finding, and the judgment of the circuit court is therefore affirmed.