ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* VAUGHAN.

Opinion delivered November 4, 1907.

1. EVIDENCE—SHOULD BE CONFINED TO ISSUES.—In an action against a railroad company for failure to transport live stock promptly, it was error to permit plaintiff to prove that defendant negligently induced plaintiff to load his cattle by assuring him that they would be shipped out right away, where no such issue was raised by the pleadings. (Page 315.)

2. INSTRUCTIONS—QUESTIONS IN DISP TE.—Where the undisputed testimony showed that defendant railroad company exercised reasonable diligence in furnishing transportation facilities and in transporting cattle tendered for shipment, it was error to submit to the jury the question whether defendant was negligent in respect thereto. (Page 315.)

Appeal from Little River Circuit Court; *James D. Head,* Special Judge; reversed.

*Glass, Estes & King,* for appellant.

1. By the terms of the contract, no recovery can be had for the damages complained of, and the court erred in refusing the peremptory instruction for defendant, because:

(1). No negligence was proved. (2). The contract expressly released the company from liability on account of delay in shipping and in receiving after tender. 28 N. E. 208. The court should have determined the issue without a jury. 63 Ark. 331; 28 N. E. 208; 41 Ill. 73; 16 So. Rep. 300; 4 Am. Rep. 467.

2. The contract was for a valuable consideration, a reduced rate, and the court erred in its charge authorizing a recovery. 50 Ark. 397; 112 U. S., *Hart* v. *Ry. Co.;* 67 Ark. 407; 64 *Id.* 115; 29 S. W. 33; 38 S. W. 515.

3. The pleading and proof do not justify the charge of the court. 63 Ark. 331.

*G. G. Pope* and *Will Steel,* for appellee.

1. There was evidence of negligence, and the case was properly submitted to a jury. A carrier may contract against liability for unavoidable accidents, but not against his own or servant's negligence, nor for exemption not just and reasonable. 47 Ark. 97. When there is any evidence tending to establish

an issue, it is error to take the case from the jury. 63 Ark. 94; 77 *Id.* 556. If there is a conflict of evidence, it is error to direct a verdict. 70 Ark. 74.

2. There was only *one* rate and *one* contract of shipment, and that was the regular form limiting the liability and the regular interstate rate. The shipper had no choice, and the limitation is invalid. 99 S. W. 535; 73 *Id.* 112; 57 *Id.* 112; *Ib.* 127; 46 *Id.* 236.

3. The proof of negligence is ample to justify a verdict. 63 Ark. 331.

McCulloch, J. This is an action instituted against appellant to recover damages alleged to have been done to a lot of cattle shipped by the plaintiff over appellant's railroad from Ashdown, Arkansas, to Boswell, Indian Territory.

It is alleged in the complaint that the cattle were delivered to appellant's agent in good order for shipment on January 2, 1906, and that the agents of the company carelessly and negligently allowed the cattle to remain in the cars on the side track at Ashdown for an unreasonable period of time, towit, twelve hours, without food and water, and without being removed from the cars for exercise and rest, by reason of which, it is alleged, twenty of the cattle died and 276 were reduced in weight, making a total damage of $872.

Appellant answered denying all the allegations relating to negligence of its servants, and setting forth a written contract for the transportation of the cattle executed by the plaintiff in consideration of a reduced freight rate, limiting the liability of the company.

The contract set forth in the answer contains the following among other stipulations:

"1. That he (the shipper) will load, unload and when necessary reload said stock, feed and water and attend to the same at his own expense and risk, while the same are in the cars of the company, or of any connecting lines, or while in any stock yards of the company or any connecting line, and, in the event of any unusual delay or detention of said stock while on said trip from any cause whatever, the shipper agrees to accept, as full compensation for all loss or damages sustained in consequence of such delay, the amount, if anything, actually expended by him or

them in the purchase of food and water therefor, and that neither the company nor any connecting line or lines over which said freight may pass shall be responsible for any loss, damage or injury which may happen to said freight, or be sustained by it while being loaded or unloaded."

"4. For the consideration aforesaid, it is expressly agreed that the live stock covered by this contract is not to be transported within any specified time, nor delivered at any particular hour, nor in season for any particular market; that neither the company nor any connecting lines shall be responsible for any delay caused by storm, failure of machinery or cars, or from obstructions of track from any cause."

"7. For the consideration aforesaid, the shipper agrees to release and does hereby release the company from any and all liability for or on account of delay in shipping said stock after the delivery thereof to its agent, and from any delay in receiving the same after tender of delivery, and for breach of any alleged contract to furnish cars at any particular time."

It appears from the evidence that the cattle were loaded in cars at Lockesburg, Arkansas, and transported over other roads to Ashdown for shipment over appellant's road to Boswell, Indian Territory. The cars reached Ashdown over the Kansas City Southern Railroad about seven o'clock in the evening. The contract was signed up immediately, and the cars were then switched by the crew of the Kansas City Southern train to the transfer track, where they remained all night and were taken away about 5:30 o'clock the next morning by an engine sent from Hugo, a division station 88 miles from Ashdown, which was about six hours run. There was no engine or train at Ashdown from the time of the arrival of plaintiff's cattle until they were taken away by the engine from Hugo next morning.

The trainmaster at Hugo testified, giving the following undisputed evidence concerning the movement of trains: "The motive power that pulled the stock involved in this suit came from Hugo. It was taken out of Hugo for the purpose of running a special train to take these cars. No other engine or train at any other point nearer than Hugo could have been sent here for the stock. We had no means of moving the stock, except by sending an engine from Hugo to Ashdown to move them. The

train sheet shows that the train that pulled these cattle left Hugo at 11 o'clock, and arrived at Ashdown in the morning. It did not go any further east, but picked up the cars and left Ashdown at 5:35 the same morning. The train was run through to Boswell, and reached there at 1:10 the afternoon of January 3d. There was no train or engine in or out of Ashdown from 6:45 on the afternoon of January 2, 1906, until the train that got to Ashdown from Hugo at 5 in the morning reached here. The train picked up a dead engine at Ft. Towson and brought it to Ashdown. That engine went dead at 6:55 in the afternoon. That is, it leaked badly, and had to be killed. That train was destined to go to Ashdown, but didn't get there. It was picked up the next morning and towed here by the special train. There was nothing available to move these cars, except to run the train from Hugo. I got the notice about nine o'clock. It takes about two hours to get a crew together. They have to have time to get down to the engine and train and make preparation to leave. We had to send a fireman, engineer and conductor. The train would not have come here that night if the call had not been made for the movement of these cattle."

### CROSS-EXAMINATION.

"There are about 15 engines in use on the line between Hugo and Ashdown. Two work east of Ashdown, a passenger engine and a freight engine. It is about thirty-two miles to Hope from here. The freight engine that was used at Hope did work between Hope and Ashdown, and if we had used it we would have had to run the engine to Boswell and back in order to take out the local train which it pulled. If the freight engine at Hope had been used, the regular card time of the trains could not have been observed. The local train would have been tied up as a consequence."

The plaintiff was allowed to testify, over defendant's objection, that the agent told him, when he went to get the cattle billed out, that the cattle would be shipped out "right away," and later said he thought they would get out about 10 o'clock that night.

The following instructions were given at plaintiff's request and over the objection of defendant:

"1.   You are instructed that if you believe from a preponderance of the evidence that the defendant induced the plaintiff to deliver to defendant his cattle under the representation that an engine would arrive within a very short time to take said cattle out, and that, relying upon such representations, the plaintiff made the contract of carriage, and did deliver his said cattle to the defendant, and defendant allowed said cattle to remain loaded in the cars, without being shipped out, for an unreasonable length of time, and by reason of such unreasonable delay they were injured thereby, then defendant would be liable to plaintiff for any such injuries so occasioned.

"2.   It is the duty of common carriers to furnish sufficient facilities for the reasonably prompt transportation of goods or stock tendered for carriage, and they are liable for any negligent delay in furnishing such facilities."

Under the pleadings and proof in the case it was erroneous to give either of these instructions.

The complaint contained no allegations of negligence on the part of appellant's servants in inducing the plaintiff to load his cattle in expectation of a train at an early hour to take them away or at any particular time.   No such issue was brought into the case by the pleadings, and it was error to permit proof to be introduced upon it, over the objection of defendant, or to submit it to the jury.   Nor was there any proof which warranted the submission of the question of negligent failure on the part of appellant to furnish facilities for transportation of the cattle. The undisputed testimony shows affirmatively that appellant's servants exercised reasonable diligence in furnishing facilities and in transporting the cattle to the destination after delivery to it.   The law does not require railroads to keep engines and cars at stations at all times to move freight offered for shipment.   It would be unreasonable to require that.   All that the law requires is that reasonable care and diligence be exercised in furnishing facilities, and in transporting freight.   2 Hutchinson on Carriers, § 652 *et seq.;* Moore on Carriers, p. 104; *Chicago, R. I. & T. Ry. Co.* v. *Kapp,* Tex. Civ. App., 83 S. W. 233.

Reversed and remanded for a new trial.