ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY *v*. CHASTAIN.

Opinion delivered March 3, 1930.

*E. T. Miller* and *Warner & Warner,* for appellant.
*E. D. Chastain,* for appellee.

MEHAFFY, J.  The appellee brought suit in the Craw-ford Circuit Court against appellant in June, 1928, to cover damages for injury to mules. He bought some mules at Park Hill, Oklahoma, and also some mules at Spring-dale, Arkansas, and both lots were shipped to Van Buren, Arkansas. The mules shipped from Park Hill, Oklahoma, arrived at Van Buren at 2 A. M., February 25, 1928. They had been shipped from Park Hill on February 24. When they reached Van Buren, instead of placing the car on

the switch adjacent to the stock yards, so they could be unloaded, appellant switched said car of mules to a loading switch for fruit and produce, placing the car alongside the shed and platform, and on a different track from that extending to the stock yards, and left said car of mules standing upon the fruit shipping track about three hundred yards from the point on the other track for unloading stock. The mules could not be unloaded at said place. The appellee reached the railroad station at Van Buren at eight o'clock in the morning after the carload of mules had arrived at two o'clock in the morning. The car was not moved to the track where it could be unloaded until four or five o'clock in the afternoon, and the mules were without water or food from the time they were loaded in Park Hill, Oklahoma, until after they were unloaded at Van Buren. The appellee did not pay the freight on the mules until after they were unloaded. The undisputed testimony shows that it was the custom to pay the freight after the mules had been unloaded or placed on the track for the purpose of being unloaded, and the railroad agent said the company did not fail to remove them to the stock-yard track because of appellee's failure to pay freight, but because they had no engine with which to move them. The evidence shows that the mules were damaged by not having any food or water from the time they were shipped at Park Hill, Oklahoma, until they were unloaded at four or five o'clock in the afternoon of the next day.

The second shipment was from Springdale, Arkansas, a distance of sixty-five miles. This shipment left Springdale on February 18, 1928, and arrived at Van Buren on February 19, and this car was switched to the unloading track, and one of the mules in the car was dead. Neither of the cars was overloaded. Appellee alleged that the damage to the mules shipped from Oklahoma was $400, and that the mule shipped from Springdale, which was dead, was worth $125. The jury returned a verdict for $290 damages to the mules shipped from Okla-

homa, and $110 as the value of the mule which was killed. Judgment was entered accordingly. Motion for new trial was filed and overruled, and this appeal is prosecuted to reverse said judgment.

It would serve no useful purpose to set out the evidence in full. The undisputed proof shows that the mules shipped from Park Hill, Oklahoma, reached Van Buren next morning at two o'clock, and were not switched to the track where they could be unloaded until four or five o'clock in the afternoon, and that they were without feed and water all this time. One of the employees of the company said he hired a negro boy to water them, but he does not know whether the boy watered them. There is therefore no proof that the mules were fed or watered from the time they left Oklahoma until they were unloaded at Van Buren, and, while the evidence as to damage is slight, as to whether they were damaged by reason of this delay to feed and water them was a question of fact, and there was sufficient evidence to submit this question to the jury.

About the mule from Springdale being dead, there is no dispute, and there is no dispute about its value. The witnesses for the railroad company testified that they handled the trains properly, and there was no rough handling, but the undisputed fact is that this was a good mule, weighed about twelve hundred pounds, in a car with the other mules, and a car that was not crowded, and that it was down and was dead when it got to Van Buren.

There is some controversy about the payment of freight, but the railroad agent himself testifies that he did not refuse to place the car where it could be unloaded because the freight was not paid, but because they had no engine with which they could move the car.

Appellant insists that it is not liable for delay or damage to the Park Hill shipment, and insists that before the shipper had a right to demand that the car be placed on the unloading track it was his duty to pay the freight. The undisputed proof, however, shows that it was custo-

mary to unload the mules before the payment of the freight, and this had been the practice as to shipments made by appellee. The undisputed proof is that appellee had at other times shipped mules over the Frisco, and, after having had them unloaded, paid the freight. Appellant calls attention to the case of *St. Louis-San Francisco Railway Company* v. *Vaughan*, 84 Ark. 311, 105 S. W. 573, and quotes from said case as follows:

"The law does not require railroads to keep engines and cars at stations at all times to move freight offered for shipment. It would be unreasonable to require that. All that the law requires is that reasonable care and diligence be exercised in furnishing facilities, and in transporting freight (2 Hutchinson on Carriers, § 652 *et seq.;* Moore on Carriers, p. 104; *Chicago, R. I. & T. Ry. Co.* v. *Kapp*, (Tex. Civ. App.) 83 S. W. 233)."

It is true that all the law requires is reasonable care and diligence, but we think the jury was justified in finding in this case that the failure to put the car of mules where it could be unloaded for the length of time the evidence shows in this case that it did, was negligence, for which the company is liable. The appellant could have placed the car of mules at the unloading track at the time it brought them to Van Buren. If it did not want to do that, it could have had the mules watered and fed. It did neither and the failure to do either was sufficient to justify the jury in finding the appellant guilty of negligence. It is true that the carrier has a lien on goods transported for its freight charges, but it is also true that the carrier can waive this lien, and the proof shows that it did waive it in this case. It is contended by appellant that there was no sufficient evidence of damage to this shipment, there being no proof of the market value, either before or after the shipment. As we have already said, the evidence as to damage was slight. The appellee testified that he saw the mules late in the afternoon before they were loaded the next day; that they were in good condition; that when they were unloaded at Van Buren

they did not look like the same mules; that they had done without water and feed for forty hours. He testified that he thought the mules were $400 off; that he knew they were in good condition when put in the car.

G. A. Ethridge testified that he purchased the mules, that they were good mules, but gaunt and lacked feed and water.

Appellant next contends that it is not liable for loss of the mule in the Springdale shipment. The appellant was bound to use reasonable care to transport said mule, and deliver it in good condition. He was not required to deliver it in good condition, but required to use ordinary care to do this. The mule, according to the evidence, was in good condition when it left Springdale, the distance from Springdale to Van Buren being only sixty-five miles, and it was down in the car dead when it got to Van Buren. The jury evidently reached the conclusion that, the mule being in good condition when shipped and being killed on the way, this could not have happened without negligence in handling the car. Appellant contends that, upon proof that suitable cars were used and that the carrier performed the duties incumbent upon it, an unexplained loss or injury to the live stock is presumed to have been due to the natural propensities of the animals. It is true that the company is not liable for any injury caused by the inherent vices of the live stock, and the proof of negligence in the shipment of this mule is very slight. We cannot say, however, that it was not sufficient to justify the jury in finding appellant guilty of negligence.

It is next contended that the court erred in giving instructions. But the objection urged to instruction No. 1, is "that there was no evidence that the defendant failed to use ordinary diligence to unload the mules after plaintiff demanded same and offered to pay the lawful charges." We have already stated that the evidence shows that the delay was not because of the failure to pay the freight charges, but, as the agent himself testified, it was caused by waiting for placement. Defendant

also urges a reversal because of the court's failure to give instructions requested by it. We think the court fully and fairly instructed the jury, and that there was no error in refusing to give the instructions complained of. It is urged that the evidence with reference to the custom in delivering shipments before the payment of freight was incompetent, and also that the evidence on the part of appellee as to damages was incompetent. We do not agree with appellant in these contentions. In the first place, the evidence of the custom was proper, and that, together with the evidence of the appellant's agent, shows that the failure to pay the freight was not the cause of the delay. The evidence as to the damages, as we have already said, is slight, but sufficient to sustain the verdict. While the writer does not believe there is sufficient evidence of negligence on the part of appellant causing the death of the mule shipped from Springdale, yet a majority of the court think the evidence is sufficient to sustain the verdict, and the judgment of the circuit court is affirmed.