AMERICAN RAILWAY EXPRESS COMPANY *v.* COLE.

Opinion delivered October 26, 1931.

*A. M. Hartung* and *Warner & Warner*, for appellant.
*D. H. Howell,* for appellee.

MEHAFFY, J. This suit was brought by appellee to recover damages in the sum of $454.86, alleged to have been caused by the negligence of appellant.

Appellee, on the 12th day of May, 1929, delivered to appellant 448 crates of strawberries which were received and accepted for transportation. The berries were to have been transported to St. Louis, Mo., but on the 13th day of May, 1929, appellant was instructed to divert said car of strawberries to Cleveland, Ohio. The shipment arrived at Cleveland on May 14, 1929, too late for the market of that date.

It was alleged that the appellant was negligent in transporting the shipment in that it did not transport it within a reasonable time, and in not furnishing appellee a properly constructed and equipped refrigerator car,

and that it was also negligent in not icing and keeping properly re-iced the car in which the berries were transported.

It also alleged that appellant negligently and carelessly allowed the ice to melt away in the bunkers and allowed and permitted the temperature of said berries to rise to a high degree; and that, when the shipment of berries arrived at Cleveland, they were found to be soft, rotten, wet, mouldy, overripe, leaky, and otherwise deteriorated, and were thereby greatly depreciated in value.

John Steward, who bought the berries in the car on May 11th and inspected them, testified that the berries were dry, clean, mostly firm, in good condition, grade A, which is equivalent to No. 1. The car was set May 11th at 6:30 P. M.; loading completed May 12th, and delivered to appellant at 2:30 A. M. This witness had had about 12 years' experience. The berries were not diseased to such extent that could be determined at that time.

On cross-examination witness said he had no independent recollection of these cars, but his record respecting the berries was accurate. A few berries were small, but they were mostly medium to large. Ten per cent. of the berries did not have color. Witness found nothing wrong with the car; was satisfied with the car and accepted it.

Another witness, Donald P. Pocock, testified that he acted as broker in the sale of this car of berries; that the car arrived at Cleveland at 4:45 A. M. May 14th, and was placed for delivery between 4:45 and 6:00 A. M. same day. The berries were refused by the purchaser on account of the weak condition. This witness inspected the berries May 14th and found them in poor condition; top two layers of berries soft, and some leaking. The berries had been sold for $3 a crate. After the purchaser refused to take the berries on account of their damaged condition, witness resold them for a smaller sum, but for the full market value of berries in damaged condition. This witness had had 18 years' experience, and in his opinion the

damages to the berries was due either to faulty equipment or improper refrigeration. Witness stated that, if the car had been properly transported, the condition of the berries would have been the same when they arrived at Cleveland that they were when shipped.

The appellee testified about the shipment of the berries and the sale f. o. b. Morrilton for $3 a crate; that in his opinion if the berries had received ordinary care in shipment they would not have been damaged, and that the damage, he thought was due to improper refrigeration; that, if given ordinary care in transportation, the berries would hold up six to eight days.

S. L. Robinson, who had been a shipper of produce and fruit for 15 years, testified that the berries would hold up and be delivered in merchantable condition for 6 or 8 days.

Another witness, H. Rouw, who had handled strawberries 12 or 15 years, testified that No. 1 quality of berries, when the condition was good, the berries dry, clean and mostly firm, under proper handling would hold up 6 to 8 days.

W. Getes, a mechanical engineer for the appellant, testified about the construction of the car, when it was built, and how the air circulates; and H. A. Simms, a mechanical supervisor of cars for the appellant, testified that the car is handled in passenger train service, and cars are inspected each time they are put in a train; knows nothing personally about this car during the particular trip, but said if it was not all right he would have heard of it.

Earl Sanders, another witness for the appellant, testified that he cleaned and iced the car in question in Van Buren on May 10th; that it was iced to capacity, and the condition of the car after inspection was good. He does not know how many blocks of ice or how many pounds of ice were put in; no record was kept of the amount of ice put in the car, but it was iced to capacity.

A. L. Drilling, testified that he supervised the loading of the car at Morrilton and supervised the inspec-

tion; when loading started the temperature was 42 degrees inside the car; that the condition of the berries was fair quality, sandy and overripe; that several different lots were affected with small spots and bruises; 25 per cent. in that condition; temperature of the car was 66 degrees after loading was completed. Car moved on first train at 4:40 A. M. Ice was 11 inches down at 2:30 A. M. There were 14 crates of berries loaded into the car in which the quarts were about half full; that he had had 6 years' experience in inspecting berries. U. S. No. 1 berries are not defective in any way; not spotted or overripe, and medium to large in size; does not know what defects are allowed in U. S. No. 1 berries, but knows a good car of berries; does not remember anything personally about the car except what was in the record. This witness also testified that Tom Nation, working for Mr. Cole, loaded some of the cups which were not full. There were some good lots of berries in the car, but about 25 per cent. were bad. Car was iced before it left Van Buren. The ice was down about 11 inches five hours after loading began, does not know what caused the yellow spots in the berries, but were so large you could see them with your eyes; does not know the grade; 25 per cent. of the berries were defective. It was dry the day they were loaded, but it had rained the day before.

C. J. Treadway, inspector for the appellant at North Little Rock, testified that his record showed that the car was placed at the icing platform at 8:05 A. M. May 12th, and icing completed at 8:20 A. M.; put in approximately 4,200 pounds, which filled bunkers to capacity. Temperature was 76 degrees outside. Ice would have to be down about 28 or 30 inches to get 4,200 pounds in the bunkers.

A. H. Hyderman, general foreman for Railway Express Agency, St. Louis, Mo., testified that the car arrived at 8:02 P. M. May 12th; estimated the amount of ice put in at 1,500 pounds.

Mr. H. E. Cunningham, general foreman for express company at St. Louis, testified that in May, 1929, there

were 2,400 pounds of ice put in the car at 1:15 P. M. on the 13th. This witness testified from his record and has no personal recollection other than shown by the record.

H. D. Marks, general foreman of the express company at Cleveland, Ohio, testified about the arrival of the car, and that the consignee was notified and that he came the following morning at 4:30 to take the car.

W. F. Wheeler, general foreman of the express agency at Cleveland, testified that he re-iced the car and found it in first-class condition; bunkers were filled to capacity with 2,350 pounds.

E. N. Watson, supervisor of express company in Cleveland testified about the number of express cars set for unloading on the morning of the 14th, and it was agreed that H. F. Kellam, if present, would testify that he inspected the car at 8:00 A. M., May 14th; that the ice was 5 inches down; outside temperature was 51 degrees; temperature of berries, 43 at top and 39 at bottom; berries full ripe and mature; 2 to 4 per cent. scars and blemishes; 6 per cent. decay.

K. S. Branch, market specialist for U. S. Department of Agriculture, testified that he had had 13 years' experience in inspecting fruits and vegetables and has been connected with the U. S. Government 7 years. He testified as to the temperature; that the temperature was 57 degrees and raining, and that that was bad condition for strawberries; market was down; supply liberal; that there are very few cars of berries that do not show some decay; temperature at bottom of load, 39 degrees, and at the top, 43 degrees, indicates very good refrigeration.

John Steward was recalled in rebuttal, and testified that it was not true that 14 crates of berries went into the car that were not inspected by him, and that the quarts were about half full; there would not be 14 crates put in without his knowing it; knows nothing about any yellow spots.

The appellant contends that the plaintiff wholly failed to establish negligence, and for that reason he was not entitled to recover.

Appellee's witnesses testified that the berries were in good condition when delivered to the appellant, and a number of witnesses testified that berries in the condition these were at the time of shipment would stand up from 6 to 8 days if the car was in good condition and kept properly iced. In fact, there is no dispute about this in the evidence.

There is some conflict in the evidence as to the condition at the time they were delivered to the appellant, but this was a question of fact properly submitted to the jury, and there was ample evidence to sustain the finding by the jury that the berries were in good condition when loaded and would stand up from 6 to 8 days if the car was properly iced.

The appellee alleged that the appellant was negligent in not furnishing a properly constructed and equipped refrigerator car, and was negligent in not icing and keeping properly re-iced the car furnished for the loading and transportation of the berries; that appellant negligently and carelessly allowed the ice to melt away in the bunkers of said car; allowed and permitted the temperature of said berries to rise to a high degree. These were the acts of negligence alleged in the complaint, and there was sufficient evidence of failure to keep the car properly iced to submit this question to the jury.

The evidence set out above tends to show that the ice was permitted to get low, and the undisputed evidence shows that they arrived at Cleveland in a damaged condition. There is no conflict in the testimony as to the length of time the berries would stand up if the car was properly iced. It was only three days from the time the berries were loaded until they reached their destination, Cleveland, Ohio, at which time all the evidence shows they were in a damaged condition.

Several witnesses testified that the condition of the berries was caused by failure to properly ice the car, and one witness testified that damage was caused either by faulty equipment or improper refrigeration. The jury

may have believed and found from the evidence that the berries were in good condition when delivered to the carrier, and in damaged condition when they arrived at Cleveland, and that this was caused by improper refrigeration.

The appellee, having alleged specific acts of negligence and alleged that these acts of negligence caused the damage, the burden was on him to prove the negligence and resulting damage.

Appellant first calls attention to and relies on *American Railway Express Co.* v. *Cole*, 183 Ark. 557, 37 S. W. (2d) 699. In that case, however, the judgment was not reversed because of the insufficiency of the evidence. The court said: "There is ample evidence of a substantial nature to show that the damage to the berries resulted either from improper equipment or from a failure to ice the car as it should have been."

The judgment was reversed because the circuit court gave erroneous instructions. Instructions were given making the express company liable as an insurer. Other instructions were given on the question of negligence, and the court said that the result of giving the instructions was to create an irreconcilable conflict in the instructions and leave the jury without any proper or consistent guide. In the instant case no such instructions were given.

In the case of *Mo. Pac. Ry. Co.* v. *Fine*, 183 Ark. 15, 34 S. W. (2d) 755, the suit was based on negligence, and there was also an instruction given to the effect that the carrier was responsible as an insurer. These cases hold that where a suit is based on negligence, as this case is, the shipper must prove the negligence in order to recover.

Appellant calls attention to numerous other cases, but the rule announced in these cases is not applicable here because the jury were told in this case that it was the duty of the carrier to use ordinary care.

The appellant objects, however, to the instruction because it mentioned proper shipping facilities. The in-

struction objected to reads as follows: "You are instructed that it is the duty of the carrier to use ordinary care to furnish proper shipping facilities for the kind and character of commodity which it undertakes to carry, and in this case it was the duty of the defendant to use ordinary care to furnish a properly constructed refrigerator car, to use ordinary care to sufficiently ice to preserve the strawberries loaded therein, and to use ordinary care to keep said car sufficiently iced for such purpose until the same was delivered at its destination."

The complaint alleged that the appellant was negligent in not furnishing appellee a properly constructed and equipped refrigerator car, and the evidence of some of the witnesses tends to prove that the damaged condition of the berries was caused either by faulty equipment or improper refrigeration.

The next case referred to and relied on by appellant is *St. L. & S. F. R. Co.* v. *Vaughan,* 84 Ark. 311, 105 S. W. 573. The judgment in that case was reversed because of erroneous instructions. The court said: "The complaint contained no allegations of negligence on the part of appellant's servants in inducing the plaintiff to load his cattle in expectation of a train at an early hour to take them away, or at any particular time. No such issue was brought into the case by pleadings, and it was error to permit proof to be introduced upon it, over the objection of defendant, or to submit it to the jury. Nor was there any proof which warranted the submission of question of negligent failure on the part of appellant to furnish facilities for transportation of cattle."

The principle announced in that case has no application here because both the pleadings and the proof justified the giving of the instruction in this case. This court has many times held that it is error to give an instruction on an issue not raised in the pleadings, but the issues in this case on which the instruction was given were raised in the pleadings, and there was some evidence tending to support the allegation in the complaint. In the last case cited there was no allegation in the complaint

upon which to base the instruction complained of there, and the evidence, when offered, was objected to by the appellant. If the evidence had been introduced without objection, the complaint would have been considered amended to conform to the proof, and the instruction would have been proper.

The jury were not instructed that it was the duty of the carrier to sufficiently ice the car to preserve the berries, but they were told that it was its duty to use ordinary care for this purpose.

Appellant next contends that the court erred in its instruction on the measure of damages. This instruction told the jury that, if they found for the plaintiff, they would assess his damages, if any, between the original sale price, if they found there was such a sale, and the net amount received for said berries in their damaged condition. In view of the proof in this case, we do not think the instruction given to the jury on the measure of damages was in any way misleading and would not justify a reversal of the judgment. The evidence showed that the berries were sold for the highest price, or rather for their full market value, in their deteriorated condition, and the jury could not have been misled by the giving of said instructions.

There was ample evidence to sustain the verdict of the jury, and there was no error in the instructions.

The judgment is affirmed.