BENNETT v. BELL.

Opinion delivered March 19, 1928.

1. AUTOMOBILES—DUTY OF DRIVER TOWARD PASSENGERS.—The driver of an automobile is bound to exercise ordinary care in its operation for the safe transportation of his passengers, whether they are guests by sufferance, invited or self-invited.

2. NEGLIGENCE—INSTRUCTION DISREGARDING ISSUE.—In an action for personal injuries by a passenger against the driver of an automobile, an instruction allowing the jury to find for defendant if they believed the injury was caused by the road condition and not from the high rate of speed, if persons of ordinary experience and sagacity could not have foreseen the alleged accident might have occurred, held erroneous as disregarding the alleged negligence in operating the car at an excessive and dangerous rate of speed, considering the condition of the road.

3. NEGLIGENCE—INSTRUCTION DISREGARDING ISSUE.—In a personal injury action by a passenger against the driver of an automobile, an instruction permitting a finding for defendant if the jury found another automobile was approaching the one in which plaintiff was driving, and that it was necessary for defendant to drive to the side of the road in meeting said car, and that loose gravel caused the car to skid without defendant's fault, and that an accident was caused thereby, held erroneous as disregarding the alleged negligence in operating the car at an excessive and dangerous speed in view of the condition of the road.

4. NEGLIGENCE—SOLE CAUSE OF INJURY.—Negligence need not be the sole cause of injury to render one liable therefor.

5. NEGLIGENCE—PROXIMATE CAUSE.—The law will regard the proximate cause as the efficient and responsible cause of an injury.

6. TRIAL—MATTER OUTSIDE OF PLEADING.—In a personal injury action by a passenger against the driver of an automobile, an instruction telling the jury that, if they believed plaintiff got into defendant's automobile knowing that defendant was so intoxicated as to make him unduly reckless in driving the automobile, plaintiff assumed the risk and could not recover, *held* erroneous as being outside of the pleading and ignoring contention as to the nature of the ride.

7. TRIAL—INSTRUCTION UNDULY STRESSING RELEASE.—In a personal injury action by a passenger against the driver of an automobile, an instruction that the jury was called upon first to determine whether there had been a settlement of the claim for damages and that they need not consider either the question of defendant's negligence or the extent of plaintiff's injuries until they had decided such matter, *held* erroneous as unduly stressing the settlement and release.

8. COMPROMISE AND SETTLEMENT—INSTRUCTION.—In an action by an automobile passenger against the driver for personal injury in which it was admitted that the defendant had paid part of plaintiff's damages, an instruction from which the jury might have understood that if the passenger settled any part of his damage claim he could not recover, *held* erroneous.

Appeal from Columbia Circuit Court; *L. S. Britt,* Judge; reversed.

STATEMENT OF FACTS.

Appellant brought this suit for damages for personal injuries received while riding in appellee's automobile at his invitation.

The complaint alleged that he, with E. D. Thomas, was invited by appellee, Brooks H. Bell, to ride in his car from Bell's garage around to a restaurant near the hotel where they were stopping. They got into the car for that purpose, and appellee, instead of driving around to the restaurant, turned his car, over the protest of appellant and Thomas, and drove off in an opposite direction from Smackover; that, upon coming to a place about two and one-half miles out, where a bridge had been burned, he turned the car around, and started back

at a dangerous and reckless rate of speed, appellant and his friend both protesting against such speed, and, in turning a sharp curve in the road, he ran into some loose gravel, and the car turned over, injuring plaintiff terribly; three of his ribs were broken, and his spinal column was fractured, and he had suffered great pain, and he will continue so to do, and he is permanently injured, and his earning capacity destroyed.

The answer denied the allegations of the complaint, and alleged that Thomas had suggested the drive, and he and the appellant got into his car, and he drove on down to where the bridge was burned out; that appellant and Thomas were licensees merely, and that, if he was driving at a high rate of speed, they knew it, and made no protest against it, and were guilty of contributory negligence, and assumed the risk, which barred appellant from any right of recovery.

It appears from the testimony that appellant, Bennett, and Thomas had driven over to Smackover on the afternoon of the injury in the evening, where they were engaged in work on a schoolhouse. They stopped at the hotel where they had been staying, and went down to put their car in Bell's garage, where they had been keeping it. That Bell had a new Lincoln car, and insisted on taking them driving. They protested that they had had enough driving, and did not care to go. He finally suggested that they get into the car and he would take them around to the restaurant or cafe, near their rooms, where he was going for supper. They got into the car, and he started off in a different direction, but they still thought he was going to turn at a place further on, but, instead of doing so, he drove on into the Smackover-El Dorado Road and down towards El Dorado, to the burnt bridge, about two and one-half miles. That he turned the car there and started back, saying to appellant, "You don't believe this car will make sixty-five miles per hour in second gear, do you?" to which he replied, "Yes, but you be damn sure you don't try to make it."

Appellee drove about one hundred yards, and shifted the gears again, and Bennett asked him not to drive so fast, and Thomas said: "Slow down; you are on this curve." Bennett said he looked at the speedometer, and it was standing on 65 when they struck the curve, and the light shone out through the brush, and he saw that they were close to the ditch. That Bell gave the car a cut, and the hind end could not turn, and the car turned over, and virtually turned around, the front of the car being in the opposite direction from which they were going. Bennett stated it turned over on them, and he and Mr. Thomas went under it, and it rolled again, and he went with it, and the car turned over again after it fell on them.

The roadbed was about three or four feet high where the injury occurred, with a ditch by the side, cut by the grader. There was some loose gravel on the road at the place where the wreck occurred.

Bennett stated that his back was broken, and he couldn't get up, and that Thomas had not yet regained his breath, and couldn't talk when Bell asked if they were hurt. About that time another car drove up and carried Bennett and Thomas to a little hospital in Smackover, but nobody was there, and they carried them to the hotel, and went back to get Mr. Bell.

Plaintiff was severely injured, his spinal column being broken, and his legs paralyzed to some extent. He has been operated on since, and some of the fractured bone removed. He will never recover.

Appellee denied that he had asked appellant to ride in his car, and that he was driving or handling the car recklessly, and said he was only driving about 35 or 40 miles per hour when the accident occurred; that, on account of meeting an approaching car at the curve, he had tried to turn out to the side, when the loose gravel caused the car to skid and finally turn over. Said that they had had one or two drinks before going out for the drive, but nobody testified that appellee, the driver of the

car, was intoxicated or under the influence of liquor. Appellee also pleaded a release in bar of the action.

The court instructed the jury, giving, over appellant's objections, general and special, instructions Nos. 2, 6, 8, 10, 11 and 14, and from the judgment against him this appeal is prosecuted.

*Joiner & Stevens* and *Jones & Jones,* for appellant.

*McKay & Smith,* for appellee.

KIRBY, J.   The driver of an automobile or motor vehicle is bound to the exercise of ordinary care in the operation thereof for the safe transportation of his guests and other passengers and to avoid personal injury to them, and this duty extends to all such passengers, whether guests by sufferance, invited or self-invited. *Black* v. *Goldwebber,* 172 Ark. 862, 291 S. W. 76, 2 R. C. L. 1183; Huddy, Automobiles, 117, § 18; *Mitchell* v. *Raymond,* 181 Wis. 591, 195 N. W. 855, 859.

There are two acts of negligence alleged in the complaint; the driving of the car at an excessive and dangerous rate of speed, and the handling of it in its operation in a careless, negligent and dangerous manner, and it is complained that some of the instructions given for the appellee disregard altogether one of the charges of negligence.

Instruction No. 11 allowed the jury to find for the defendant if they believed from the evidence that the plaintiff's injury was caused by the condition of the road at the place of the wreck, and not from the high rate of speed it was being driven, if a person of ordinary experience and sagacity could not have foreseen that the accident might occur.

Under instruction No. 14 they were told, if they found an automobile was approaching the one in which plaintiff was riding from an opposite direction, and that it was necessary for defendant to drive to the side of the road in meeting said automobile, and that loose gravel on the side of the road where the defendant necessarily drove caused the car to skid, without the fault of the

defendant, and that the wreck of the automobile was caused thereby, they should find for the defendant.

These instructions disregarded the alleged negligence in operating the car at an excessive and dangerous rate of speed as combined and concurring with the operation of the car upon the bad road, and were both erroneous. If the injury was caused by the alleged negligence of operating the car at a high and dangerous rate of speed on the bad road, or in turning out on the loose gravel to avoid the oncoming car, the defendant would still have been liable for the injury.

It is well settled that negligence, in order to render a person liable, need not be the sole cause of the injury, and that one is liable if his negligence concurred with an inanimate cause producing it. The negligent act or omission must be the cause which produced the injury, but it need not be the sole cause, nor the last or nearest one. The law will regard the proximate as the efficient and responsible cause. Of course, no injury could have resulted from the bad condition of the road or the loose gravel unless the car was being operated thereon, and its operation at the place and in the manner might have been negligent because of such bad condition, even though it had been driven at a much lower rate of speed than alleged; in other words, ordinary care in the operation of the car required the driver to take into consideration the existing bad condition of the road over which he was driving.

Appellee stated that the road was new, had just been completed, and there was no watchman on it since the bridge had burned out, and there was a curve where the accident happened, something like a mile from the creek, and he was almost around the curve, "and I saw the lights of a car coming, and I got out of this little place where the tracks had been running, and when I did I got over the side, and my hind wheels skidded, and that gravel had not been packed, they just throwed it up there on the bed of the road; they did not subgrade, and all I could account for is that the hind wheels got out of the

ruts and skidded in that loose gravel, and my car turned right square to the left, and I like to have gone over in the ditch to the left, and then I turned to the right, and that is when the car turned over.''

The court also erred in giving defendant's requested instruction No. 8, telling the jury that, if they believed from the evidence that plaintiff got into the defendant's automobile knowing he was in such an intoxicated condition as to make him unduly reckless in the driving of the automobile, he assumed the risk of riding in the automobile under such conditions, and cannot recover for any injury caused thereby. This instruction was abstract, defendant's intoxicated condition not having been pleaded, nor any risk assumed by plaintiff on account of it, and the evidence offered to show such condition was objected to, and the instruction disregards altogether appellant's contention that he only consented to ride around the block to the restaurant, in accepting the invitation and getting into the car.

The instructions relative to the settlement and release were also erroneous. No. 4 unduly stresses the question, and told the jury they were called upon, first, to determine whether there had been a settlement of the claim for damages, and that they need not consider either the negligence of the defendant or the extent of the plaintiff's injuries until they had decided the question. Instruction No. 2 told the jury that, if the defendant went to the residence of the plaintiff, and plaintiff offered to accept from the defendant the sum of $400, or any other sum, in full settlement ''of any claims that he might have against the defendant for damages,'' and that, pursuant to said agreement, the defendant paid said sum to the plaintiff, he was bound by the settlement, and could not recover, notwithstanding that they, the jury, might believe the settlement was improvident and unwise.

The plaintiff testified that the defendant wanted to pay certain hospital bills and expenses, which he was entitled to, specifying them, as part of his damages if he recovered, amounting to $400, and that he permitted

him to do so. That nothing was said about a settlement of his entire claim for damages, and that he had no intention of doing so, and did not make any settlement of it.

Said instruction No. 2 was misleading, and the jury could have understood from it that, if he settled any claim or any part of the damages, he could not recover in the suit, and especially was this true since the court had laid so much stress on the question of settlement, having told the jury to first determine whether a settlement had been made, and not to regard either the negligence of the defendant or the extent of the plaintiff's injuries until they had decided the question of settlement. Of course, if plaintiff had made, without fraud or imposition, a full settlement of his claim for damages for $400, and accepted the payment thereof, he would have been bound thereby, and could not have recovered anything further, as the court told the jury in instruction No. 3 given at appellee's request.

For the errors designated the judgment is reversed, and the cause remanded for a new trial.