NEWELL *v.* ARLINGTON HOTEL COMPANY.

4-9890 252 S. W. 2d 611

Opinion delivered November 17, 1952.

216

 

*Wils Davis, W. H. Fisher* and *A. D. Shelton,* for appellant.

*Wootton, Land & Matthews,* for appellee.

ED. F. McFADDIN, Justice. Appellant, Mrs. Newell, as plaintiff, filed action against appellee, Arlington Hotel Company, as defendant, alleging that while a guest she fell in the Hotel kitchen and sustained injuries for which she sought damages. Trial to a jury resulted in a verdict for defendant, and this appeal followed.

Mrs. Newell was a member of the Business & Professional Women's Club of Hot Springs, which met in regular meeting each month with a dinner at the Arlington Hotel. In January, 1950, the meeting was held at 7:00 P. M. in one of the private dining rooms at the rear of the grand ballroom on the second floor of the Hotel. The ladies were advised by the Hotel that there would be a large meeting in the ballroom at 8:00 P. M., and that if the Business & Professional Women's meeting was not concluded by 8:00 P. M., then the ladies of the B. & P. W. Club would make their exit from the private dining room by going down one flight of stairs to the kitchen and through the kitchen to the Hotel lobby.

The Business & Professional Women's Club meeting continued until about 8:30, and the ladies used the said kitchen exit. In going through the kitchen, Mrs. Newell fell and suffered painful and disabling injuries. By herself and her witnesses, Mrs. Newell undertook to establish that the kitchen was poorly lighted; that the Hotel had a rubber and metal mat in the kitchen over which Mrs. Newell was obliged to walk; that the mat was old

and worn; and that her shoe became fastened in the mat and caused her to fall. By its witnesses, the Hotel undertook to establish that the kitchen was perfectly lighted; that the mat was not old; that it had no metal in it; that Mrs. Newell never stepped on the mat; that Mrs. Newell fell because she was wearing high heel platform sole shoes; that her ankle turned; and that Mrs. Newell admitted after her injuries that the fall was entirely her own fault. On appeal only three points were argued.

I. *Cross-Examination of Mrs. Dodd.* Mrs. Dodd was a witness for the plaintiff, and on cross-examination, this occurred:

"Q. What was the condition of the lighting in the kitchen as compared to the dining room from which you came?

"A. It was dim, much darker.

"Q. You mean there was less light in the kitchen than there was in the dining room?

"A. Yes, sir.

"Q. Now, did you make safe passage through the kitchen?

"A. Oh, yes.

"Q. Did you have any difficulty?

"A. Somewhat.

"Q. In what respect did you have difficulty?

"A. Well, I've never been through there before.

"Q. Could you see the floor?

"A. Yes.

"Q. Could you see any object that was on the floor?

"A. I could.

"Q. You could see the doorway through which you turned to go out?

"A. Yes.

"Q. You could see the floor in front of the doorway?

"A. Oh, yes, by watching carefully."

The appellant says that the Court erred in requiring the witness on cross-examination to answer the question whether she had any difficulty in getting out of the kitchen; and to support the objection, appellant cites the case of *Davis* v. *Safeway Stores,* 195 Ark. 23, 110 S. W. 2d 695; the contention in the case at bar being that it was not a question whether other people could get out of the kitchen, but whether the Hotel Company used ordinary care to provide a safe exit for *all* people.

Mrs. Dodd was being cross-examined on the same points that the appellant had asked her on direct examination. She had testified that she was directed through the kitchen by a colored boy and that she was about twelve feet behind Mrs. Newell; and that three or four other ladies were between them. Then she also testified on direct examination:

"Q. What was the difference in the lighting system where you had dinner, in the dining room, and the kitchen part of it?

"A. Well, it was much darker.

"Q. In the dining room or kitchen?

"A. In the kitchen.

"Q. Much darker in the kitchen?

"A. Yes, sir.

"Q. As you went down then, you went down into a dimmer lighted stairway and little hallway?

"A. Yes, sir.

"Q. And then on through the kitchen?

"A. Yes, sir."

When we consider the direct examination, it becomes apparent that the cross-examination is within the judicially allowable latitude for cross-examination. In *Tiner*

*v. State,* 109 Ark. 138, 158 S. W. 1087, in discussing the extent of cross-examination, we said:

"It is well settled that cross-examination should be permitted as to all matters developed on direct examination, and it may be extended into all circumstances surrounding or affecting the transaction which the witness has detailed in his direct examination."

Other Arkansas cases to the same effect are collected in West's Arkansas Digest, "Witnesses," § 268. The general rule in American jurisdictions is in accord with our holding above quoted. See 58 Am. Jur. 349. We have repeatedly held that the trial court is vested with broad discretion in regulating the scope of cross-examinations. One such case is *Zorub v. Mo. Pac. Rd. Co.,* 182 Ark. 232, 31 S. W. 2d 421, which also holds that the rule regarding the latitude of cross-examination is the same in civil and criminal cases. We hold that the trial court did not abuse its discretion in allowing the cross-examination of Mrs. Dodd.

II. *Ruling on the Testimony of L. M. White.* In her case in chief, the plaintiff had described in words the kind of mat on which she fell, but no mat had been introduced. In the defendant's case in chief, there was introduced a roll of corrugated rubber matting, which defendant's witnesses identified as being identical with the rubber mat that was on the floor at the time Mrs. Newell received her injuries. Then on rebuttal, plaintiff called L. M. White, an employee of the Arlington Hotel, and exhibited to him a rubber mat, and the following transpired:

"Q. I show you a mat, and I want to now offer this as Exhibit '4' to Mrs. Newell's testimony. I want to show you a sectional mat with wire in it. Tell the jury whether it was that type of mat or not? . . .

"A. Isn't that a rubber mat there? That's all I know.

"Q. Well, was it the type of rubber mat I hold in my hand or not? That's what I'm trying to—

"A. I think it was a little type like that. I'd rather not—I don't know. That's what I was thinking about, a rubber mat like that. (Holding up Plaintiff's Exhibit '4')."

Assuming without deciding that White's testimony as to the mat was proper on rebuttal, it is clear that the witness answered the question because he said the mat in the Hotel kitchen was like the one which the plaintiff's counsel exhibited to him as plaintiff's Exhibit "4."

The plaintiff's attorney then asked the witness this question:

"Q. I ask you if you didn't state in that statement that the mat in front of the egg-boiler was made out of rubber and iron parts or pins. It was old, worn, dark at that time, and those ladies had to pass over that mat?"

The defendant objected to the question and claimed that the plaintiff's attorney was seeking to impeach his own witness; and upon the Court's ruling, the propounded question was never answered. The plaintiff saved exceptions to the ruling, but did not pursue the matter any further. If the quoted question was not by way of impeachment, the plaintiff's attorney could have asked the Court for permission to allow the witness to refresh his memory by reference to the alleged statement; and then the interrogation could have been continued. Such is the proper procedure. See *National Americans* v. *Ritch,* 121 Ark. 185, 180 S. W. 488; and see, also, 58 Am. Jur. 324. But no such request was made, so there is no foundation on which to predicate an assignment of error for refusal to allow the witness to refresh his memory.

If the quoted question was by way of impeachment, then plaintiff's attorney should have pleaded surprise and made an offer to prove the written statement to support the surprise and to lay the foundation for impeachment. But no such offer of proof was made, and therefore there is no foundation on which to predicate an assignment of error. See *Jonesboro etc. Rd. Co.* v. *Gainer,* 112 Ark. 477, 166 S. W. 571; and see, also, 58 Am. Jur. 444. The exclusion of evidence is not a ground for re-

versal when the appellant has failed to show what the excluded evidence was.[1] *Tidwell* v. *Southern etc. Works,* 87 Ark. 52, 112 S. W. 152; *Russell* v. *Brooks,* 92 Ark. 509, 122 S. W. 649; see, also, 5 C. J. S. 938, and cases collected in West's Arkansas Digest, "Appeal and Error," § 1056 (1). We find no foundation to support the assignment of error here argued.

III. *Defendant's Instruction No. 2.* The Court gave the defendant's Instruction No. 2, as follows:

"You are instructed that the defendant, Arlington Hotel Company, is not an insurer of the safety of its guests, but is required only to use ordinary and reasonable care for the safety of such persons; and if you find from the evidence in this case that the Arlington Hotel Company used ordinary and reasonable care for the safety of the plaintiff, then your verdict will be for the defendant, Arlington Hotel Company."

The plaintiff's objection to this Instruction, as made in the Trial Court, reads as follows:

"Plaintiff objects to defendant's requested instruction No. 2 for the reason that it is abstract and does not state the whole law of this case in the respect of the care required of the Arlington Hotel. It is true that the hotel company is not the insurer of the safety of the guests, but there is an implied contract between the guest of the hotel and the operators of the hotel that the premises are safe and it is not required of plaintiff to make any extra investigation or as to condition; that they have a right to rely upon the places where they go as a guest to be safe. In other words, it's not like one who is crossing a railroad. They don't have to stop, look and listen for danger."

---

[1] In 1918, Colonel C. C. Hamby, a distinguished member of the Prescott, Arkansas, Bar, published a short treatise entitled, "Appeal and Error"; and on page 14, this statement appears:

"If the court sustains an objection to a question asked a witness, or refuses to permit a witness to testify to desired state of facts, the party introducing the witness should state then and there what facts the witness would swear to and have the court stenographer take it down. . . . If this is not done the Supreme Court will not pass on the question. *K. P. Supreme Lodge* v. *Robbins,* 70 Ark. 364, 67 S. W. 758; *Boland* v. *Stanley,* 88 Ark. 562, 115 S. W. 163; . . ."

Thus the objection challenged the instruction, by claiming (a) that it was abstract; and (b) that it failed to fully state the applicable law as to the degree of care required of the Hotel. (a) The instruction is not abstract[2] because it relates to the applicable rule of law in the case between these parties. See 53 Am. Jur. 451.

(b) The instruction fully and correctly states the applicable rule of law as to the degree of care required of the Hotel. In *Ford* v. *Adams,* 212 Ark. 458, 206 S. W. 2d 970, 207 S. W. 2d 311, in discussing the degree of care that a hotel owed to its guests, we said:

"Inasmuch as the owners and the lessee of the hotel were not insurers of the safety of their guests, liability must be determined by the answer to the question 'Did they furnish the facilities for the safety of their guests which ordinary care required and reasonable prudence would have suggested?' If they did they were not negligent, although it may now appear that some 'suitable and workable' method might have been employed which was not employed."

In *Trulock* v. *Willey,* 187 Fed. 956,[3] the Appellate Court approved the instruction that the trial court gave to the jury:

"A keeper of a hotel is not an insurer of the safety of his guests. The limit of his duty is to exercise reasonable care for the safety and comfort of his guests, . . . "

In 28 Am. Jur. 579, the holdings from many jurisdictions are summarized in this general statement:

"It is the duty of proprietors of hotels and other houses of public accommodation to provide reasonably

_____

[2] Ballentine's Law Dictionary, published in 1930, defines an abstract instruction: "An instruction given by the court to the jury amounting to a mere abstract statement of the law. As the very purpose of instructions is to aid the jury in arriving at a proper verdict, the jury should be informed in clear, plain and concise terms as to the law which is applicable to the case at bar and it is erroneous to give instructions which are not applicable, but are mere abstract statements of the law. See 14 R. C. L. 782."

[3] This is a case decided by the Circuit Court of Appeals of the 8th Circuit, and is cited by the appellant to sustain her contention.

safe ways of ingress and egress for their patrons, and to exercise ordinary care to keep the hallways and passage-ways reasonably well lighted and free of obstructions so that guests may pass to and from their rooms and other places about the premises in safety; . . . ''

We hold that the questioned instruction is good against the objections urged against it.

Affirmed.