Olin Mathieson Chemical Corporation *v.* Shirey.

5-952                                    291 S. W. 2d 250

Opinion delivered June 11, 1956.

*Shackleford & Shackleford, J. M. Shackleford, Jr.,
Mehaffy, Smith & Williams, John T. Williams* and *Robert V. Light,* for appellant.

*Bruce Bennett, William I. Prewett* and *Wright, Harrison, Lindsey & Upton,* for appellee.

Ed. F. McFaddin, Associate Justice. The sole question on this appeal ·is whether the Trial Court was in error in refusing to direct a verdict for the appellant.

The appellee, Mrs. Ethel Shirey, as administratrix of the estate of her husband W. E. Shirey, filed action against Olin· Mathieson Chemical Corporation (hereinafter called "Olin"), seeking to hold Olin liable for the negligent acts of ·L. C. Lester, the driver of the truck that killed' W. E. Shirey. · Lester was hauling a truck load of pulpwood timber from Olin's land in South Arkansas to the International Paper Company in Louisiana when he negligently drove his truck on the wrong side of the highway, into a truck being driven by W. E. Shirey; and, as a result, Shirey was killed. Olin has all the time insisted that there was no substantial evidence to take the case to the jury on the question of the liability of Olin for the negligence of L. C. Lester. Olin's defense was and is that Lester was not its employee, and

that. Olin was and is in no way liable for the negligence of Lester.

Olin claims that it sold its pulpwood timber in Arkansas to Joe Canady, and that the relation between Olin and Canady was that of seller and buyer; that Canady contracted with Leo Harper, an independent contractor, to cut the pulpwood timber and transport the same from Olin's lands to the plant of the International Paper Company: and that Lester was the servant of Harper, who was an independent contractor. Thus, Olin claims that it could not be legally responsible for the acts of Lester, the servant of Harper, since Harper was an independent contractor dealing with Canady, who was, in turn, a buyer of timber from Olin.

But the appellee claims that the so-called seller-buyer relationship between Olin and Canady was a sham to conceal the real fact that Canady was an agent of Olin for the sole purpose of selling pulpwood timber; that Olin directed the activities of Canady; that Canady directed the activities of Harper; that Lester, as the admitted servant of Harper, was in effect working for Olin; and that Olin had the right to direct and control the operations of Lester in driving his truck. In the excellent briefs submitted in this Court, both sides have cited our authorities on independent contractors. Some of the cases so cited are: *Moore and Chicago Mill & Lbr. Co.* v. *Phillips,* 197 Ark. 131, 120 S. W. 2d 722: *Pine Woods Lbr. Co.* v. *Cheatham,* 186 Ark. 1060, 57 S. W. 2d 813; *Farmer Stave & Heading Co.* v. *Whorton,* 193 Ark. 708, 102 S. W. 2d 79; *Irvan* v. *Bounds,* 205 Ark. 752, 170 S. W. 2d 674; *Rice* v. *Sheppard,* 205 Ark. 193, 168 S. W. 2d 198; *Fordyce Lbr. Co.* v. *Wardlaw,* 206 Ark. 35, 176 S. W. 2d 241; *Hearnsberger* v. *McGaughey,* 218 Ark. 663, 239 S. W. 2d 17; *Mathews* v. *Zimmerman,* 221 Ark. 622, 255 S. W. 2d 168; *Hollingsworth & Frazier* v. *Barnett,* 226 Ark. 54, 287 S. W. 2d 888; *Ozan Lbr. Co.* v. *McNeely,* 214 Ark. 657, 217 S. W. 2d 341; *Barr* v. *Matlock,* 222 Ark. 260, 258 S. W. 2d 540; *Boone* v. *Massey,* 212 Ark. 280, 205 S. W. 2d 454; *Sinclair Refining Co.* v. *Piles,* 215 Ark. 469, 221 S. W. 2d 12; *Cap-*

*ital City Lbr. Co. v. Cash,* 214 Ark. 35, 214 S. W. 2d 363; *Ozan Lbr. Co. v. Tidwell,* 210 Ark. 942, 198 S. W. 2d 182.

Olin insists that there is no substantial evidence to take the case to the jury as to the liability of Olin for the negligence of Lester. The rule is well established that where fair-minded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question should go to the jury. *St. L. I. M. & S. Railway Co. v. Fuqua,* 114 Ark. 112, 169 S. W. 786[1]. It is also well established that it is proper to direct a verdict for the defendant only when, under the evidence and all reasonable inferences deducible therefrom, the plaintiff is not — under the law — entitled to recover. *Wortz* v. *Ft. Smith Biscuit Co.,* 105 Ark. 526, 151 S. W. 691[2].

We hold that the aggregate of the evidence, as hereinafter listed in the numbered paragraphs, was sufficient to present a jury question as to Olin's liability for the negligence of Lester:

(1) Olin owned a quarter million acres of timber land in South Arkansas and North Louisiana and regularly sold pulpwood from these lands. Olin sold pulpwood from its Louisiana lands to only one person, who was O. B. Crow; and Olin sold pulpwood from its Arkansas lands to only one person, who was Joe Canady.

(2) Canady had no capital invested and never *directly* paid Olin for such timber. Instead, all the timber from Olin's land was taken to the plant of the International Paper Company at Bastrop, Louisiana, and there scaled for the first time; and International calculated the amount of the timber at so much per cord and remitted to Olin, direct, the amount due Olin for such timber. At the time herein involved, International was paying $15.55 per cord for the timber and was remitting to Olin $3.50 per cord for pine timber and $2.50 per cord for gum timber. International had on file a written authorization from Canady to make such remittances

---

[1] Other cases to the same effect are collected in West's Arkansas Digest, "Trial," § 139.

[2] Other cases to the same effect are collected in West's Arkansas Digest, "Trial," § 139.

direct to Olin. After making such remittances to Olin, the remaining balance of the money was sent to Canady by weekly remittance; and from such amount Canady paid Harper and others similarly working. Harper, in turn, settled with Lester and Harper's timber cutters. Thus, Canady never paid Olin, *direct,* for any timber cut and never had any timber deed of any kind from Olin.

(3) The dealings between Olin and Canady had extended over several years; yet there had never been a written agreement of any kind as to the terms and conditions under which it was claimed that Olin sold, and Canady bought, the timber. The price that Olin was to receive from time to time was an oral matter. As aforesaid, there was no writing of any kind to evidence any agreement or sale between Olin and Canady; and Olin's agreement with Canady was terminable at any time. Likewise, all of Canady's agreements with Harper were oral and were terminable at any time.

(4) Olin's timber men would go over certain of Olin's lands in Arkansas and mark the trees and tops to be cut into pulpwood. Most of the time Canady went with Olin's timber men, but on one or more occasions Canady was away and Leo Harper went in place of Canady with Olin's timber men.

(5) After the trees were marked, Canady authorized Harper to cut the trees and tops into pulpwood and, after such was done, the pulpwood was loaded into trucks and hauled to the International Paper Company's plant in Louisiana, where the timber was scaled. One such truck was that of L. C. Lester.

(6) International Paper Company issued a scale ticket for each load. ''Canady-Harper'' was the name on the timber scale slips here involved. Once a week International delivered the scale tickets to Canady and paid him at the cordage rate shown, less the amount deducted and remitted direct to Olin, as previously recited. Canady then took the scale tickets to Olin and left them for Olin to calculate and determine whether all the timber cut from Olin's lands had reached International. The scale tickets remained with Olin.

(7) Some time prior to the events of this litigation, Olin's Chief Forester had become suspicious that some of the trucks hauling pulpwood from Olin's lands might not be taking the load to the International Paper Company's plant. So Olin's Chief Forester (the man in direct control for Olin) had "requested" Canady to have all the trucks hauling pulpwood from Olin's Arkansas lands numbered in *even numbers,* and had likewise "requested" Crow to have all trucks hauling pulpwood from Olin's Louisiana lands to be numbered in *odd numbers.* The identification of each truck was by a number in a circle painted on the door of the truck so hauling. Neither Canady nor Harper knew who had selected or assigned the numbers, and no one knew who paid for the number being placed on Lester's truck involved in this collision[3]. At all events, the trucks were numbered as "requested"; and Lester's truck was No. 40.

(8) Olin gave instructions to its field men and spotters that if anyone saw a truck loaded with pulpwood and bearing the Olin identification number, as aforesaid, such person was to make a note of the truck number, and the time, and direction the truck was headed, and report such information to Olin so that a check-up

---

[3] An inter-office communication brought into the record from Olin's files, dated August 26, 1954, read in part: "SUBJECT: Pulpwood truck numbers assigned to truckers hauling USM stumpage:

Joe Canady's producers — Arkansas

| Truck No. | | Truck No. | | Truck No. | |
|---|---|---|---|---|---|
| 2. | L. E. Gatson | 16. | J. L. Gatson | 30. | Leo Harper |
| 4. | C. B. Smith | 18. | Frank Thrower | 32. | Leo Harper |
| 6. | R. M. Smith | 20. | Frank Thrower | 34. | C. O. Rogers |
| 8. | R. M. Smith | 22. | L. E. Gatson | 36. | Dick Dugal |
| 10. | J. L. Gatson | 24. | C. O. Rogers | 38. | Clea Gatson |
| 12. | G. A. McGee | 26. | C. O. Rogers | 40. | Leo Harper |
| 14. | J. L. Gatson | 28. | E. D. Furlow | 42. | Taunton |

O. B. Crow's producers (La.)

| Truck No. | | Truck No. | | Truck No. | |
|---|---|---|---|---|---|
| 1. | J. C. Edwards | 19. | M. J. Halley | 37. | W. L. Andrews |
| 3. | H. V. Crow | 21. | Bill Halley | 39. | Will Traylor |
| 5. | L. L. Edwards | 23. | C. E. Halley | 41. | Will Traylor |
| 7. | L. L. Edwards | 25. | J. C. Hodge | 43. | K. C. Golsby |
| 9. | S. D. Kennedy | 27. | J. C. Nales | 45. | A. L. McElroy |
| 11. | S. H. Cooper | 29. | J. L. Thomas | 47. | Leon Washington |
| 13. | E. Antley | 31. | E. E. Auger | 49. | Jas. C. Hunt" |
| 15. | J. B. Ward | 33. | J. A. Auger | | |
| 17. | J. B. Ward | 35. | Frank Will | | |

could be made to see if the truck reached the plant of the International Paper Company.

(9) After a truck was once numbered by the Olin system, the driver of the truck was not to haul any pulpwood in that truck from any lands except Olin's, or to any place except the International Paper Company. If the driver of the truck desired to use the truck except for the Olin-International trip, then advance notice of such particular trip was to be given to Olin; and in such instance the truck driver was to be given an instrument bearing Olin's approval as to such particular trip[4].

(10) If a truck, numbered to the said Olin identification system, should be making a trip and taking pulpwood from lands other than Olin's to the International Paper Company's plant at Bastrop, the copy of Olin's approval of such outside trip was to be given to International.

(11) On one occasion a truck bearing an Olin identification number, as aforesaid, broke down enroute to the

---

[4] In the record are two letters wherein Leo Harper had made outside hauls. These letters were written by Olin's executives and signed by Harper before the proposed trip, and were worded as follows:

"August 2, 1954

"Mr. E. A. Freeman
Frost Lumber Industries, Inc.
Huttig, Arkansas.
Dear Mr. Freeman:

I will be hauling one load of gum pulpwood today, August 2, 1954, that belongs to B. A. Meshell. I have bought this load of wood from Mr. Meshell. This wood does not belong to Olin Industries, Inc. This is the only load of wood I will haul on this permit. This load of wood is on the side of the road about 3 miles north of Bastrop. I will haul this on my truck No. 32.

Yours very truly,
Leo Harper.

This is approved August 2, 1954. E. A. Freeman, Head Forester."

"September 9, 1954

Mr. E. A. Freeman
Olin Industries, Inc.
Huttig, Arkansas.
Dear Mr. Freeman:

I will haul 1 load of pulpwood from Belton Frisby's place 4 miles north of New London to Crossett today. Also we will be hauling 3 loads from East Main Street near El Dorado today to Crossett. We have no quota at Bastrop this week. This is the only outside wood I will haul without again notifying you and getting approval.

Yours very truly,
Leo Harper.

This hauling has been approved this day, September 9, 1954."

International Paper Company's plant; and one of Olin's executives instructed the driver of the truck to transfer the load to an unnumbered truck and to tell the International Paper Company that such Olin executive had so ordered.

(12) Canady paid the Workmen's Compensation insurance coverage on all of the men cutting and hauling for Leo Harper, as well as all other persons cutting and hauling pulpwood from Olin's Arkansas lands. He may have been repaid by Harper, but that point is uncertain.

On the facts reflected by the foregoing numbered paragraphs, we hold that a question was made for the jury as to whether Olin had the right to direct and control the operations of Lester and his truck. There is no need to take any one of these isolated facts and say that such matter in itself was sufficient to support the Court's decision in sending the case to the jury. The point is that all of these facts *together* made a case from which reasonable men might draw the inference that Canady was in fact an agent of Olin and that Canady, as such agent, dealt with Harper as a servant rather than an independent contractor and that Olin became liable for the negligence of Harper's servants. Thus, on the total of all these facts, we hold that a jury question was made.

The judgment is affirmed.