HARKRIDER *v.* COX.

5-1705                              321 S. W. 2d 226

Opinion delivered March 2, 1959.

156

*Shaver, Tackett & Jones,* for appellant.

*Lookadoo, Gooch & Lookadoo,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal stems from a traffic mishap. Appellee, Oma Lee Cox, was the plaintiff[1] below; and appellant, G. W. Harkrider, was defendant. We will refer to the parties as they were styled in the Trial Court.

The Cox family and the Harkrider family were friends and neighbors. On Saturday morning, November 16, 1957 Mr. Harkrider was driving his pickup truck from Curtis Junction to Arkadelphia, where he worked. Miss Oma Lee Cox (17 years of age and the daughter of his neighbor, J. C. Cox) also worked in Arkadelphia; and Mr. Harkrider, seeing her waiting for a bus, invited her to ride to Arkadelphia with him in the pickup truck. They necessarily had to travel on U. S. Highway No. 67, where the traffic was very heavy; also there was an extremely dense fog. Mr. Harkrider, in attempting to overtake and pass a cattle truck in front of him, got on his left side of the highway and had a collision with an oncoming vehicle. Miss Cox was seriously injured, and brought this action against Mr. Harkrider to recover damages. The jury verdict was for Miss Cox for an

---

[1] Miss Cox was a minor at the time of the filing of the action, and it was filed by her father as her next friend.

amount not here questioned; and from the judgment rendered on the verdict, there is this appeal. Seven points, all relating to instructions, are assigned as errors. We group and discuss the pertinent assignments in convenient topic headings.

I. *Defendant's Request For Instructed Verdict.* Defendant stoutly insists that he was entitled to an instructed verdict because of our guest statute and the cases construing it. In his brief he says: "It is undisputed—in fact it is alleged and admitted by plaintiff— that Oma Lee Cox was injured while riding in the pickup truck as defendant's guest. The most serious question presented is the sufficiency of the evidence to sustain wilful and wanton disregard."

We are thus brought, face to face, with our guest statutes, which are Act No. 61 of 1935, and Act 179 of 1935, and may be found in § 75-913 and § 75-915 Ark. Stats. One of these Acts (No. 61) says that a guest can only recover when ". . . such vehicle was wilfully and wantonly operated in disregard of the rights of others." The other Act (No. 179) prohibits recovery ". . . unless such injury shall have been caused by the wilful misconduct of such owner or operator." Thus, it is conceded that before Miss Cox can recover against Mr. Harkrider, she must establish that he was guilty of wilful and wanton negligence in the operation of the truck at the time of her injury.

Defendant's counsel have listed many of our cases involving the said guest statutes;[2] but for us to discuss each of these cases in detail would be a work of supererogation and would serve no useful purpose; because, after

---

[2] Some of the cases are: *Roberson* v. *Roberson*, 193 Ark. 669, 101 S. W. 2d 961; *Southern Kansas Stage Lines Co.* v. *Ruff Co.*, 193 Ark. 684, 101 S. W. 2d 968; *Ward* v. *George*, 195 Ark. 216, 112 S. W. 2d 30; *Froman* v. *J. R. Kelley Stave Co.*, 196 Ark. 808, 120 S. W. 2d 164; *Splawn* v. *Wright*, 198 Ark. 197, 128 S. W. 2d 248; *Edwards* v. *Jeffers*, 204 Ark. 400, 162 S. W. 2d 472; *Tilghman* v. *Rightor*, 211 Ark. 229, 199 S. W. 2d 943; *McAllister* v. *Calhoun*, 212 Ark. 17, 205 S. W. 2d 40; *Cooper* v. *Calico*, 214 Ark. 853, 218 S. W. 2d 723; *Steward* v. *Thomas*, 222 Ark. 849, 262 S. W. 2d 901; *Farish* v. *Ben M. Hogan & Co.*, 223 Ark. 600, 267 S. W. 2d 503; *Scott* v. *Shairrick*, 225 Ark. 59, 279 S. W. 2d 39; *Haag* v. *Morgan*, 225 Ark. 664, 284 S. W. 2d 866; and *Callaway* v. *Cherry*, 229 Ark. 297, 314 S. W. 2d 506.

all, it is a question in each case whether the particular facts therein made a jury question as to wilful and wanton negligence. In *Scott* v. *Shairrick,* 225 Ark. 59, 279 S. W. 2d 39, we said:

"It is clear from the evidence in this case that the trial court had no right to declare as a matter of law that appellant's negligence was not of the degree described in the above statutes. The degree of appellant's negligence was therefore a matter to be presented to the jury, as was done here. In *McAllister, Administrator* v. *Calhoun,* 212 Ark. 17, 205 S. W. 2d 40, we quoted with approval from *Splawn, Administratrix* v. *Wright,* 198 Ark. 197, 128 S. W. 2d 248: 'Whether an automobile is being operated in such a manner as to amount to wanton and wilful conduct in disregard of the rights of others must be determined by the facts and circumstances of each individual case.' "

We proceed, therefore, to review the facts in the case at bar:

(a) Mr. Harkrider had been driving on Highway 67 from his home to Arkadelphia for a number of years, so he knew that it was a busy highway.

(b) On the particular morning in question, the fog and mist were so heavy that visibility was limited to 50 or 100 feet.[3] Mr. Harkrider was driving on a straight stretch of road, had been following a cattle truck for several miles, and had been unable to pass it because of the number of approaching vehicles.

(c) The cattle truck in front of Mr. Harkrider was fourteen feet long and was driving at a speed of 40 miles per hour;[4] so to pass the cattle truck Mr. Harkrider would have been required to go at least 45 miles per hour.[5] A car travelling 45 miles an hour goes 66 feet

---

[3] The witness, Jesse Thomas, said he could only see 50 to 75 feet in front of him. The witness, Raines, said: ". . . I didn't attempt to pass anyone. It was too foggy and misty . . . I knew it was risking too many lives to pass anybody on a morning like that."

[4] Mr. Taylor, the driver of the cattle truck, estimated his speed at 40 miles per hour while Harkrider was trying to pass him.

[5] Jesse Thomas, who drove his car into the ditch to avoid a headon collision with Mr. Harkrider, estimated Harkrider's speed, while attempting to pass the cattle truck, to have been 45 miles per hour.

per second, so in passing the cattle truck Mr. Harkrider was on his wrong side of the road and travelling at a speed of 66 feet per second when he could only see from 50 to 100 feet in front of him. It would require some time for a car going 45 miles an hour to pass a car going 40 miles an hour; yet during all of that time, Mr. Harkrider could not see what was coming and was on the wrong side of the road! He did not get there accidentally: he got there intentionally and deliberately.

(d) The fog was so heavy that the cars had on either parking lights or full driving lights; and yet Mr. Harkrider deliberately undertook to drive on the wrong side of the road in such perilous conditions of visibility. There were several vehicles going south. The first one saw Mr. Harkrider's car just in time to take to the ditch and avoid a collision; but the second car was not so fortunate; and the collision resulted.

(e) The fact that the 17-year old girl (the plaintiff in this case) did not protest to Mr. Harkrider regarding his driving, and did not tell him how to drive the car, certainly, cannot be used against her as a *matter of law*. When did a child have to tell her father's contemporary to be careful in his driving? Under the facts in this case, the effect of her failure to protest, was for the jury.

So much for the facts. It is admitted that Mr. Harkrider was negligent: the question is, whether he was guilty of wilful and wanton negligence. Webster's Dictionary says of wilful: ''. . . self-determined, voluntary, intentional . . .'' Webster's Dictionary says of wanton: ''. . . marked by or manifesting arrogant recklessness of justice, of the rights or feelings of others . . . .'' Mr. Harkrider was certainly violating the rights of those approaching vehicles, and was certainly taking a desperate gamble when he deliberately and intentionally drove on the wrong side of the road at a speed of 66 feet per second under conditions which made it impossible for him to see more than 100 feet in front of him. In *Froman* v. *J. R. Kelley Stave & Heading Co.*, 196 Ark. 808, 120 S. W. 2d 164, the late and beloved Justice FRANK G. SMITH said: ''. . . the difference be-

tween gross negligence and willful and wanton misconduct is so narrow and indistinct that in many instances the question is one for the jury whether the negligence had become willful and wanton. The instant case is such a case."[6]

Who should decide whether Mr. Harkrider was guilty of wilful and wanton negligence under the facts in this case? It was for the jury to decide. The rule is, that when fair-minded men might differ, then the question is one for the jury.[7] In *Olin Mathieson Chem. Corp.* v. *Shirey,* 226 Ark. 530, 291 S. W. 2d 250, we referred to the rule well established in Arkansas:

"The rule is well established that where fairminded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question should go to the jury. *St. L. I. M. & S.*

---

[6] In addition to other cases and texts cited by Mr. Justice Frank G. Smith in his opinion, the following may prove beneficial to those interested in the question here involved: Annotation in 42 A.L.R. 2d 350; "Rights of injured guest as affected by obscured vision from vehicle in which he was riding"; annotation in 21 A.L.R. 2d 209, entitled: "Driving motor vehicle without lights or with improper lights as gross negligence or the like warranting recovery by guest under guest statute or similar common law rule"; annotation in 47 A.L.R. 2d 6, entitled: "Negligence of motorist colliding with vehicle approaching in wrong lane"; annotation in 74 A.L.R. 1198, entitled: "What constitutes gross negligence or the like, within statute limiting liability of owner or operator of automobile for injury to guest."

[7] In the case of *Sioux City & Pac. RR. Co.* v. *Stout,* 84 U.S. 657, 21 L. Ed. 745, there was the question of whether certain acts constituted negligence and who should determine the question; and Mr. Justice Hunt used this very beautiful language, which shows why a case like the one at bar should be submitted to a jury, and which tells what a jury is:

"Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, and apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring, than can a single judge."

*Ry. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W. 786. It is also well established that it is proper to direct a verdict for the defendant only when, under the evidence and all reasonable inferences deducible therefrom the plaintiff is not—under the law—entitled to recover. *Wortz* v. *Ft. Smith Biscuit Co.,* 105 Ark. 526, 151 S. W. 691.''

Under the facts here shown, a jury question was made as to whether Mr. Harkrider was guilty of wilful and wanton negligence; and the Trial Court was correct in refusing to instruct a verdict for the defendant.

II. *Erroneous Instruction.* The Trial Court gave a series of instructions relating generally to what is sometimes called the ''law of the road'': *i.e.,* the law as to speed, lookout, control, passing an overtaken vehicle, etc. The defendant insists that each of these instructions should have pointed out that the violation of such ''law of the road'' was merely evidence of *simple* negligence, as distinguished from wilful and wanton negligence. Probably clarifying words to such effect should have preceded or followed these several instructions on the ''law of the road''; but such can be accomplished in the event of a new trial which may result from the reversal we must make because of the error of the Court in giving the Court's Instruction No. 14 over the specific objections that the defendant offered to it. The said instruction reads:

''No motor vehicle shall be driven at a speed which would not be reasonable and prudent under the circumstances then existing. In no event shall pick-up trucks be driven on the open highway at a speed greater than 55 miles an hour. One driving at this speed or a lesser speed is not relieved from the duty to decrease speed *when approaching and crossing an intersection,* when approaching and *going around a curve,* when approaching a *hill crest,* when traveling upon any narrow or winding roadway, or when *special hazard exists with respect to pedestrians* or other traffic or by reasons of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in com-

pliance with the duty of all persons to use due care.''
(Emphasis supplied.)

The defendant objected to this instruction,[8] point-
ing out that in this case there was no evidence of (a) an
intersection, (b) a curve, (c) a hill crest, or (d) hazards
regarding pedestrians. As to these matters, the defend-
ant insisted—and quite correctly—that the instruction
was abstract. In *Newell* v. *Arlington Hotel Co.*, 221
Ark. 215, 252 S. W. 2d 611, we gave the definition of an
abstract instruction as found in Ballentine's Law Dic-
tionary:

''An instruction given by the court to the jury
amounting to a mere abstract statement of the law. As
the very purpose of instructions is to aid the jury in
arriving at a proper verdict, the jury should be informed
in clear, plain and concise terms as to the law which is
applicable to the case at bar and it is erroneous to give
instructions which are not applicable, but are mere ab-
stract statements of the law.''

---

[8] The full objection of the defendant was as follows:

"Defendant objects generally and excepts to the giving of Court's
Instruction No. 14, and specifically because this instruction fails to dis-
tinguish the difference between negligence and willful and wanton
disregard, and by the giving of this instruction, the jury is led to be-
lieve, and plaintiff's attorney will be afforded an opportunity to argue
to the jury, that any failure on the part of the defendant to properly
observe the rules of the road covered by this instruction that the plain-
tiff is entitled to recover.

"This instruction should be amended by adding thereto a provi-
sion that even if the defendant be found by the jury to be guilty of vio-
lating the involved rule of the highway, that plaintiff would not be al-
lowed to recover unless the jury found that defendant was guilty of
willful and wanton disregard for the consequences of his acts when so
violating this rule of the road.

"Defendant further specifically objects to the giving of Court's
Instruction No. 14 because there was no evidence that the defendant
vehicle was being driven at a greater speed than provided by the rule
of the road covered by this instruction; there was no intersection in-
volved in this litigation; there was no curve involved in this litigation;
there was no hill crest involved in this litigation; and there was no
narrow or winding roadway or special hazard with respect to pedes-
trians. This instruction amounted to a statement of the law to the ef-
fect that one guilty of violating any of these rules of the road covered
by this instruction constituted entitlement of the plaintiff to recover.
Such instruction need be so stated as to specifically reveal to the jury
that a simple violation of these involved rules of the road does not con-
stitute willful and wanton disregard unless the defendant was so act-
ing in willful and wanton disregard when violating the rules of the road,
if the jury finds that he did."

As early as *The State Bank* v. *McGuire* (1854), 14 Ark. 530, this Court said:

"Some of the instructions given on motion of the defendants are certainly objectionable, as argued for the plaintiff; because two of them are mere statements of legal propositions, not purporting to apply to any supposed state of case made by the evidence . . . This mode of charging juries ought to be strongly condemned."

In 53 Am. Jur. 451 *et seq.* "Trial" § 573 *et seq.*, in the discussion of abstract instructions, this appears:

"Instructions merely stating abstract principles of law tend to confuse and mislead the jurors, and to draw their minds from the real facts in the case to something which they assume to exist, but cannot find in the record. They are subject to the further objection that no one can know how a jury would apply them to the case at hand . . . No instruction should be given by the court either on its own motion or at the request of counsel which tenders an issue that is not presented by the pleadings or supported by the evidence, or which deviates therefrom in any material respect."

The case of *Coca-Cola Bottling Co. of Blytheville* v. *Doud,* 189 Ark. 986, 76 S. W. 2d 87, arose from a traffic mishap. An instruction (No. 11) was requested in that case on the abstract "law of the road." We held the Trial Court was correct in refusing the instruction, saying:

"As we have seen, the case did not involve an approach within fifty feet and a traverse of the intersection of the highways when the view of the driver was obstructed. There was no proof offered that the scene of the casualty was a business district within the meaning of the act."

We have a number of cases in which judgments were reversed because the Trial Court gave to the jury abstract instructions or instructions on matters not at issue. Some such cases are: *St. L. & S. F. Rd.* v. *Vaughan,*

84 Ark. 311, 105 S. W. 573; *El Dorado & Bastrop Rd.* v. *Whatley,* 88 Ark. 20, 114 S. W. 234; *Emerson* v. *Turner,* 95 Ark. 597, 130 S. W. 538; and *Bennett* v. *Bell,* 176 Ark. 690, 3 S. W. 2d 996. In the case at bar the defendant specifically objected to the portions of the instructions that were abstract, and the Trial Court should have omitted such abstract matter from the Instruction No. 14. They tended to confuse the jury and direct its attention away from the issues in the case.

For the error shown, the judgment is reversed and the cause is remanded.

HOLT and GEORGE ROSE SMITH, JJ., dissent.

J. SEABORN HOLT, Associate Justice, dissenting. It is my view that this case should be reversed and dismissed for the reason that I find no substantial evidence in this record to support the verdict.

The record reflects that appellee, J. C. Cox, as father and next friend of his 16-year-old daughter, Oma Lee, and individually, sued appellant, G. W. Harkrider, to recover damages sustained by Oma Lee while she was riding as a guest in a pick-up truck operated by appellant. The complaint alleged that "the sole cause of the accident was due solely to the defendant's wanton and willful negligence in driving the truck at a high and dangerous rate of speed at a time when it was so foggy that the visibility was only a short distance and attempting to pass the stock truck at a time when it was very dangerous to do so and he knew of the danger; . . . " Punitive damages were not sought. Appellant answered with a general denial. Trial to a jury resulted in a verdict for damages to Oma Lee in the amount of $3,000 and from the judgment is this appeal.

The facts, considered in the light most favorable to appellee—as we must do, are to the following effect. Oma Lee Cox, a 16-year-old girl, had known appellant for some time and had frequently ridden with him as his guest in his truck to Arkadelphia where she was in school and employed in a store on Saturdays. On the morning of Novem-

ber 16, 1957, she got in appellant's truck at Curtis Junction and they drove north on U. S. Highway 67 towards Arkadelphia. At a point about four miles south of Arkadelphia and two miles south of the collision point, L. G. Taylor drove a truck onto the highway in front of appellant and continued on towards Arkadelphia. A heavy fog enveloped the road, heavier in places than in others, and was so dense as to curtail visibility to less than 100 feet, requiring lights being used on vehicles on the highway. Appellant's truck and others that he met before the mishap had their lights on. Appellant followed the Taylor truck for about one mile when he attempted to pass to his left, and upon observing approaching headlights returned to his previous position. He then continued to follow behind this truck for about another mile when he, again on attempting to pass the Taylor truck—and at a point where his front wheels were about even with the rear wheels of the truck and to his right, first observed the lights of an approaching car some 25 feet away, driven by Mr. Thomas and traveling from 40 to 45 miles per hour, and as this car pulled to his right he saw the dim lights of a second approaching car driven by Mr. Raines and at a speed of about 45 miles per hour. There was also a third approaching car driven by Mr. Driggers, which had been following the Raines car for about two miles. The first car (Thomas) passed appellant's truck without mishap, but the left front of appellant's truck collided with the left front of the second approaching car (Raines) and the third approaching car (Driggers) collided with appellant's truck and Raines' car.

In determining the correctness of the trial court's refusal to instruct a verdict in favor of appellant here, we re-announced our rule in this language in *McAllister, Adm. v. Calhoun*, 212 Ark. 17, 205 S. W. 2d 40: "In determining on appeal the correctness of the trial court's action in directing a verdict for either party, the rule is to take that view of the evidence that is most favorable to the party against whom the verdict is directed, and where there is any evidence tending to establish an issue

in favor of the party against whom the verdict is directed, it is error to take the case from the jury. See also *Scott* v. *Wisconsin & Ark. Lbr. Co.*, 148 Ark. 66, 229 S. W. 720.''

Harkrider had been driving automobiles since in 1923 and this was his first mishap. He had been driving along the highway in question for more than a year and was familiar with it. He was employed at a college in Arkadelphia, commuting back and forth from his home, which was three miles west of Curtis Junction. Miss Cox testified that she was a senior in high school and had been working on Saturdays for about two years. Harkrider is her friend and neighbor and she had ridden to Arkadelphia with him on about four other occasions (thus saving her bus fare). She considered him a careful driver, that she did not pay any attention to his driving but he never did anything to indicate he was reckless. There is absolutely no testimony that Miss Cox on the occasion that she was injured, or on any other trips with appellant, ever complained or ever had occasion to warn or admonish him about his driving. Our rule is well established in a long line of cases that before a guest may recover under our guest statutes, *Sec. 75-913 Ark. Stats. 1947*, there must be some substantial evidence showing that the operator of the vehicle was operating it willfully and wantonly in disregard of the rights of others. *Sec. 75-913* Ark. Stats. provides: ''No person transported as a guest in any automotive vehicle upon the public highways or in aircraft being flown in the air, or while upon the ground, shall have a cause of action against the owner or operator of such vehicle, or aircraft, for damage on account of any injury, death or loss occasioned by the operation of such automotive vehicle or aircraft unless such vehicle or aircraft was willfully and wantonly operated in disregard of the rights of the others.'' In the very recent case of *Steward, Adm.* v. *Thomas,* 222 Ark. 849, 262 S. W. 2d 901, we said: ''Willful misconduct, or to operate an automobile in willful and wanton disregard of the rights of others, means something more than gross negligence. *Splawn, Adm.* v. *Wright,* 198 Ark. 197, 128 S. W. 2d 248.''

We also said in *Splawn, Adm.* v. *Wright,* 198 Ark. 197, 128 S. W. 2d 248: "Willful negligence means a failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. Herein, we think, lies the distinction between gross and willful negligence as intended by the statute. Gross negligence falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. . . . Willful negligence involves the element of conduct equivalent to a so-called constructive intent. . . . Cases will rarely arise in which it can be shown to a court's satisfaction that collisions or upsets of automobiles, with resultant injury to guests, occur because of 'willful misconduct' of the operator. Those who operate automobiles should have (and when mentally normal, do have) a conscious desire to avert injury to themselves in such operation, at least co-extensive with that not to injure their guests; and since to operate a car in a willfully negligent manner offers a threat to security from injury as great to the operator as it does to the guest, evidence to prove that grade of negligence should be unusually strong and convincing before the operator can and will be convicted of such.''

In *Cooper* v. *Calico,* 214 Ark. 853, 218 S. W. 2d 723, where damages were denied to a guest under the provisions of our guest statute above, we used this language: ". . . we find this driver (accepting appellee's testimony) suddenly on the paved highway, in the path of an oncoming car. No one could successfully deny that his conduct was careless. Certainly he was negligent in not stopping and looking in each direction before placing his Chevrolet and his passengers in a position of peril. But even gross negligence, under the guest statutes, is not enough. There must be a willfulness, a wantonness, an indifferent abandonment in respect of consequences, applicable alike to self and guests.''

So here, I think the most that can be said of appellant's negligence, in the circumstances, is that it was gross, but there was no substantial evidence in this record that it was wanton and willful in the sense required by the stat-

ute *supra,* as we have construed it, in order to recover damages.

Justice GEORGE ROSE SMITH joins in this dissent.